Steven W. Fogg, WSBA No. 23528
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, WA 98104-1001
Ph: (206) 625-8600

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION, | No. 2:23-cv-00113-MKD |
| Plaintiff, | PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |
| v. | 07/26/2023 |
| ROBERT W. FERGUSON, ATTORNEY GENERAL OF THE STATE OF WASHINGTON, | With Oral Argument: TBD Spokane |
| Defendant. | |

MOTION FOR PRELIMINARY INJUNCTION

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

**TABLE OF CONTENTS**

2    INTRODUCTION ................................................................................. 1

3    BACKGROUND .................................................................................. 2

4    ARGUMENT ..................................................................................... 10

5    I.    Plaintiff Is Likely To Succeed On The Merits. ............................... 10

6         A.    The PLCAA Preempts SB 5078. ........................................ 10

7         B.    SB 5078 Violates the Dormant Commerce Clause. ............. 17

8         C.    SB 5078 Violates the First Amendment. ........................... 20

9         D.    SB 5078 Is Void for Vagueness. ........................................ 25

10        E.    SB 5078 Violates the Second Amendment. ......................... 26

11   II.   The Remaining Factors All Favor Injunctive Relief. ..................... 28

12   CONCLUSION .................................................................................. 30

13

14

15

16

17

18

19

20

21

22

23

24

25

MOTION FOR PRELIMINARY INJUNCTION - i

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

# TABLE OF AUTHORITIES

2

**Cases**

3
4

*44 Liquormart, Inc. v. Rhode Island*,
  517 U.S. 484 (1996) ........................................................................22

5

*AK Futures LLC v. Boyd St. Distro, LLC*,
  35 F.4th 682 (9th Cir. 2022) ...........................................................10

6
7

*Ariz. Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) .........................................................30

8
9

*Ashcroft v. Free Speech Coalition*,
  535 U.S. 234 (2002) ........................................................................24

10
11

*Baldwin v. G.A.F. Seelig, Inc.*,
  294 U.S. 511 (1935) ................................................................... 18, 20

12
13

*Bank of Am. Corp. v. City of Miami*,
  581 U.S. 189 (2017) ........................................................................15

14

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973) ........................................................................25

15
16

*Brown v. Entm't Merchants Ass'n*,
  564 U.S. 786 (2011) ................................................................... 21, 23

17
18

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
  476 U.S. 573 (1986) ........................................................................20

19
20

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*,
  563 F.3d 847 (9th Cir. 2009) ...........................................................29

21

*Cal. State Legis. Bd. v. Dep't of Transp.*,
  400 F.3d 760 (9th Cir. 2005) ...........................................................13

22
23

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
  273 F.3d 536 (3d Cir. 2001) ................................................. 3, 15, 27, 28

24
25

*Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*,
  492 F.3d 484 (4th Cir. 2007) ...........................................................18

MOTION FOR PRELIMINARY INJUNCTION - ii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
  447 U.S. 557 (1980) ................................................................................21

*City of Chicago v. Beretta U.S.A. Corp.*,
  821 N.E.2d 1099 (Ill. 2004) ......................................................................3

*City of Cincinnati v. Beretta U.S.A. Corp.*,
  768 N.E.2d 1136 (Ohio 2002) ...................................................................3

*City of Gary ex rel. King v. Smith & Wesson Corp.*,
  801 N.E.2d 1222 (Ind. 2003) ....................................................................3

*City of N.Y. v. Beretta*,
  524 F.3d 384 (2d. Cir. 2008) ....................................................... 11, 13, 14

*City of Philadelphia v. Beretta U.S.A. Corp.*,
  277 F.3d 415 (3d Cir. 2002) .............................................................. 3, 15

*Connally v. Gen. Constr. Co.*,
  269 U.S. 385 (1926) ................................................................................25

*Craig v. Boren*,
  429 U.S. 190 (1976) ................................................................................29

*Cramp v. Bd. Of Pub. Instruction of Orange Cnty.*,
  368 U.S. 278 (1961) ................................................................................25

*Daniels Sharpsmart, Inc. v. Smith*,
  889 F.3d 608 (9th Cir. 2018) ........................................................... 18, 20

*District of Columbia v. Beretta U.S.A. Corp.*,
  940 A.2d 163 (D.C. 2008) .........................................................................6

*Exxon Co., U.S.A. v. Sofec, Inc.*,
  517 U.S. 830 (1996) ................................................................................28

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ................................................................................25

*Hazardous Waste Treatment Council v. South Carolina*,
  945 F.2d 781 (4th Cir. 1991) ...................................................................30

MOTION FOR PRELIMINARY INJUNCTION - iii

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989) ..................................................................17

*Holmes v. Secs. Inv. Prot. Corp.*,
    503 U.S. 258 (1992) ..................................................................15

*Ileto v. Glock, Inc.*,
    565 F.3d 1126 (9th Cir. 2009) .......................................... 1, 11, 13, 16

*In re Acad., Ltd.*,
    625 S.W.3d 19 (Tex. 2021) ...........................................................5

*James v. Arms Tech., Inc.*,
    820 A.2d 27 (N.J. Super. Ct. App. Div. 2003) .................................3

*Johnson v. United States*,
    576 U.S. 591 (2015) ..................................................................26

*Legato Vapors, LLC v. Cook*,
    847 F.3d 825 (7th Cir. 2017) .......................................................18

*Lorillard Tobacco Co. v. Reilly*,
    533 U.S. 525 (2001) ..................................................................22

*Luis v. United States*,
    578 U.S. 5 (2016) .....................................................................26

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) .......................................................28

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
    142 S.Ct. 2111 (2022) ...............................................................27

*NAACP v. Button*,
    371 U.S. 415 (1963) ..................................................................24

*Nat'l Shooting Sports Found. v. Platkin*, 2023 WL 1380388 (D.N.J. Jan. 31, 2023)
    ............................................................................ 12, 13, 17

*Nken v. Holder*,
    556 U.S. 418 (2009) ..................................................................29

MOTION FOR PRELIMINARY INJUNCTION - iv

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
   761 N.Y.S.2d 192 (N.Y. App. Div. 2003) ..........................................................16

*Reno v. ACLU*,
   521 U.S. 844 (1997) ..........................................................24

*Rodriguez v. Robbins*,
   715 F.3d 1127 (9th Cir. 2013) ..........................................................29

*Rubin v. Coors Brewing Co.*,
   514 U.S. 476 (1995) ..........................................................22

*Sam Francis Found. v. Christies, Inc.*,
   784 F.3d 1320 (9th Cir. 2015) .......................................... 18, 20

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) .......................................... 21, 22

*Teixeira v. Cnty. of Alameda*,
   873 F.3d 670 (9th Cir. 2017) ..........................................................26

*United States v. Oakland Cannabis Buyers' Coop.*,
   532 U.S. 483 (2001) ..........................................................30

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982) ..........................................................25

*Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*,
   537 U.S. 371 (2003) ..........................................................13

*Washington v. DeVos*,
   466 F.Supp.3d 1151 (E.D. Wa. 2020)..........................................................10

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ..........................................................17

**Statutes**

15 U.S.C. §7901(a)(2) ..........................................................4

15 U.S.C. §7901(a)(4) ..........................................................14

MOTION FOR PRELIMINARY INJUNCTION - v

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

15 U.S.C. §7901(a)(5) ............................................................................... 4, 14

15 U.S.C. §7901(a)(6) ............................................................................... 4, 16

15 U.S.C. §7901(a)(7) ............................................................................ passim

15 U.S.C. §7901(a)(8) ....................................................................................4

15 U.S.C. §7901(b)(1) ............................................................................. 4, 17

15 U.S.C. §7902(a) .................................................................................. 5, 10

15 U.S.C. §7903(2)-(6) ...................................................................................5

15 U.S.C. §7903(5)(A)(ii) ..................................................................... passim

15 U.S.C. §7903(5)(B) ...................................................................................5

Pub. L. No. 109-92, 119 Stat. 2095 (2005) ...................................................4

Wash. Rev. Code §7.48.010 ...........................................................................9

Wash. Rev. Code §7.48.020 ...........................................................................9

Wash. Rev. Code §7.48.030 ...........................................................................9

Wash. Rev. Code §7.48.120 .........................................................................26

Wash. Rev. Code §7.48.210 ...........................................................................9

Wash. Rev. Code §9.41.042(1) .....................................................................23

Wash. Rev. Code §9.41.042(2) .......................................................................8

Wash. Rev. Code §9.41.042(5)(b) ..................................................................8

MOTION FOR PRELIMINARY INJUNCTION - vi

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**Other Authorities**

Recent Legislation, *Protection of Lawful Commerce in Arms Act*, 119 Harv. L.
   Rev. 1939 (2006) ................................................................................................3

Sharon Walsh, *Gun Industry Views Accord as Dangerous Crack in Its Unity*,
   Wash. Post (Mar. 18, 2000), https://wapo.st/2Zcp5KS ........................................3

MOTION FOR PRELIMINARY INJUNCTION - vii

# INTRODUCTION

Congress passed the Protection of Lawful Commerce in Arms Act to stamp out efforts to use nebulous "reasonableness" standards to make manufacturers and sellers of firearms pay for harms caused by criminals who misuse their products. *See Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009).  Yet that did not stop lawmakers in Olympia from trying to foist exactly that sort of liability on members of the firearms industry.  Senate Bill 5078 empowers the state and "individuals suffering special injury" on account of "gun violence" to seek "justice and fair remedies for those harms" *not* from criminals who engaged in the "illegal" acts, but from "industry members" who simply "manufacture[d]," "market[ed]," or sold (lawful) products someone else misused.  §1(1)–(5).  SB 5078 imposes sweeping liability for the mere "manufacture, … marketing, or … sale of a firearm industry product" if a Washington judge or jury decides that it "contribute[d] to a public nuisance in this state," *even if the industry member's conduct was not independently unlawful*. §2(2)–(3). Lawful conduct protected by the First and Second Amendments thus may give rise to state-law tort liability if a product is misused in Washington by *someone else*.  That is precisely what the PLCAA preempts.

That is reason enough to invalidate SB 5078, but additional reasons abound. SB 5078 directly regulates commerce entirely outside of Washington, in violation of the Commerce Clause.  It also imposes liability on firearms industry members for marketing their products "unreasonably," and specifically prohibits the marketing of

MOTION FOR PRELIMINARY INJUNCTION - 1

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

products targeted at minors *even as to products minors may lawfully use in the state*. That radical overbreadth cannot be squared with the First Amendment, even under the lower standard of commercial-speech scrutiny the state is certain to claim (erroneously) applies, and it renders SB 5078 void for vagueness as to the non-speech conduct it polices.  Finally, SB 5078 burdens Second Amendment rights in ways that Congress and the courts have all recognized have no historical foundation.

NSSF is thus more than likely to succeed on the merits of its claims.  And the remaining factors equally favor injunctive relief.  Subjecting NSSF members to an unconstitutional statute inflicts irreparable harm as a matter of law—especially when the statute in question restricts and chills constitutionally protected speech. By contrast, enforcement of an unconstitutional statute is always contrary to the public interest.  The Court should enjoin enforcement of SB 5078.

## BACKGROUND

1. In the 1990s, state and local governments initiated a series of lawsuits in response to concerns about violent crimes involving firearms.  Yet rather than train their sights on the criminals responsible for those acts, they sued federally licensed manufacturers and distributors of legal firearms that were lawfully manufactured and sold and that functioned as intended.  For instance, Camden County, New Jersey, sued licensed "handgun manufacturers" alleging that their (heavily regulated and fully lawful) "marketing and distribution policies and practices" rendered them "liable under a public nuisance theory for the governmental costs associated with the

MOTION FOR PRELIMINARY INJUNCTION - 2

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

criminal use of handguns." *Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 538 (3d Cir. 2001) (per curiam).  The district court dismissed that complaint, and the Third Circuit affirmed, *see id.*, as it did when it confronted a similar effort by Philadelphia a year later, *see City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 419 (3d Cir. 2002).  *See also City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1147–48 (Ill. 2004) (similar).

But similar suits proliferated, and some courts were more solicitous of these novel theories. *See, e.g.*, *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1143–44 (Ohio 2002) (allowing, *inter alia*, public nuisance claims); *James v. Arms Tech., Inc.*, 820 A.2d 27, 50–53 (N.J. Super. Ct. App. Div. 2003) (same); *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1231–32 (Ind. 2003) (same).  And while not all of these suits succeeded on the merits, winning in court was not the only objective.  The real goal was to hobble the industry. Recognizing that "[t]he legal fees" needed to defend against a rising tide of similar suits "alone" would have been "enough to bankrupt the industry," Sharon Walsh, *Gun Industry Views Accord as Dangerous Crack in Its Unity*, Wash. Post (Mar. 18, 2000), https://wapo.st/2Zcp5KS, states "pressed on" with their novel negligence and nuisance suits, "regardless of their chance of success, spending taxpayers' money in a war of attrition against the firearms industry," Recent Legislation, *Protection of Lawful Commerce in Arms Act*, 119 Harv. L. Rev. 1939, 1940 (2006).

Congress saw these lawsuits for what they were:  a coordinated effort to saddle

MOTION FOR PRELIMINARY INJUNCTION - 3

the firearms industry with liability for the acts of criminals.  The plaintiffs pressed "theories without foundation in hundreds of years of the common law and jurisprudence of the United States."  15 U.S.C. §7901(a)(7).  Their novel suits also came at a substantial cost to individual rights, including the right to keep and bear arms and industry members' right to pursue their trade.  *Id.* §7901(a)(2), (6)–(7). And Congress found it simply unfair to make heavily regulated businesses pay for "harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended."  *Id.* §7901(a)(5).

2. Congress passed the PLCAA to put an end to such efforts.  Pub. L. No. 109–92, 119 Stat. 2095 (2005) (codified at 15 U.S.C. §§7901-7903).  Indeed, the PLCAA's very first enumerated "purpose[]" is to "prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations" based on harm "caused by the criminal or unlawful misuse of firearm products" by third parties.  15 U.S.C. §7901(b)(1); *see also id.* §7901(a)(6) (finding that such suits are "an abuse of the legal system, … threaten[] the diminution of a basic constitutional right and civil liberty, … and constitute[] an unreasonable burden on interstate and foreign commerce").

The statute makes good on that promise, broadly prohibiting "any person," "including any governmental entity," from bringing any civil action against any federally licensed "manufacturer or seller" of firearms or related products for "relief[] resulting from the criminal or unlawful misuse of a qualified product by …

MOTION FOR PRELIMINARY INJUNCTION - 4

a third party." 15 U.S.C. §§7902(a), 7903(2)–(6). That is not just a defense against liability; the PLCAA confers a substantive "immunity" from certain kinds of suits altogether. *In re Acad., Ltd.*, 625 S.W.3d 19, 33–34 (Tex. 2021).

That immunity from suit is subject to only a handful of exceptions for actions in which a federally licensed manufacturer or seller of a firearm or related product has allegedly engaged in some well-defined type of wrongful conduct. For example, the PLCAA does not preempt certain types of suits against sellers who have been convicted of transferring a firearm to a prohibited person. 15 U.S.C. §7903(5)(A)(ii). It similarly exempts suits against industry members for negligence per se and negligent entrustment, *id.* §7903(5)(A)(ii), with the latter defined as supplying a firearm to someone "the seller knows, or reasonably should know, … is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others," *id.* §7903(5)(B). And it exempts suits for breach of contract or warranty and product defect, as well as actions brought by the U.S. Attorney General to enforce certain federal laws. *Id.* §7903(5)(A)(iv)–(vi).

Finally, the PLCAA does not preempt actions in which a federally licensed manufacturer or seller is alleged to have "knowingly violated a State or Federal statute applicable to the sale or marketing of [a firearm or related] product" where "the violation was a proximate cause of the harm for which relief is sought." *Id.* §7903(5)(A)(iii). This provision has come to be known as the "predicate exception" because, "to take effect, it requires that the manufacturer or seller have committed

MOTION FOR PRELIMINARY INJUNCTION - 5

1
2
3
4
5
6
7
8
9
10

an underlying (or predicate) statutory violation." *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 168 (D.C. 2008).  Congress made clear, however, that not just any statutory violation will suffice.  The predicate exception covers only those actions that require a "knowing[]" violation that was "a proximate cause" of the plaintiff's injury.  15 U.S.C. §7903(5)(A)(iii).  And it includes two illustrative examples of the types of statutes that suffice, each of which imposes specific obligations on how firearms may be sold: a law imposing record-keeping requirements; and a law prohibiting firearms suppliers from aiding, abetting, or conspiring in straw purchases of their products.  *Id.* §7903(5)(A)(iii)(I)–(II).

11
12
13
14
15
16

In short, none of the PLCAA's enumerated exceptions extends to state laws that authorize imposition of liability against manufacturers and sellers of firearms and ammunition for harms more directly caused by the criminal conduct of third parties.  In fact, such laws, founded on novel expansions of tort law, are exactly what the PLCAA was enacted to stamp out.  *See id.* §7901(a)(7).

17
18
19
20
21
22

3. The PLCAA accomplished Congress' goal of deterring intrepid state and local governments from seeking to hold firearms manufacturers and sellers liable for criminals' misdeeds for a while.  But not forever.  Washington recently joined a growing effort by a handful of states to jump back into the fray, enacting SB 5078, a law specifically crafted to try to circumvent the PLCAA.

23
24
25

First, SB 5078 creates a new cause of action for public nuisance that applies only to "[f]irearm industry member[s]," i.e., those "engaged in the wholesale or retail

MOTION FOR PRELIMINARY INJUNCTION - 6

sale, manufacturing, distribution, importing, or marketing of a firearm industry product." §2(1)(a), (2); *see also* §2(1)(b), (1)(e) (defining "firearm industry product" to include any "firearm," "[a]mmunition," or "component" "used or possessed in [Washington]," even if not "sold, made, distributed, or marketed in this state"). The new cause of action is sweeping. A "firearm industry member" may be held liable for the "manufacture, distribution, importation, marketing, or wholesale or retail sale of a firearm industry product," even if that conduct was fully lawful where it occurred and fully compliant with federal law, if it later is deemed by a Washington judge or jury to have "contribute[d] to a public nuisance." §2(2–3). Lawful conduct protected by the First Amendment ("marketing") and the Second Amendment ("manufacture" and "sale of a firearm industry product") thus may be the basis of a Washington tort action if a product lawfully marketed, lawfully made, and lawfully sold is later used or possessed unlawfully *by someone else* in Washington.

Second, SB 5078 imposes liability anytime an industry member fails to "establish, implement, and enforce reasonable controls regarding its manufacture, sale, distribution, importing, use, and marketing of firearm industry products," §2(4), again even if the relevant products were not "sold, made, distributed, or marketed" in Washington, *see* §2(1)(b). To make matters worse, the statute does not key "reasonable controls" solely to the many federal, state, and local laws with which firearms manufacturers and sellers must already comply. Nor does it identify what controls beyond compliance with existing statutory obligations are or are not

MOTION FOR PRELIMINARY INJUNCTION - 7

"reasonable." Instead, the most it does is supply a recursive gloss: "'Reasonable controls,'" the statute tells us, "means *reasonable* procedures, safeguards, and business practices." §2(1)(f) (emphasis added). Failure to abide by this nebulous "reasonable controls" obligation likewise shall be "a public nuisance." §2(7).

SB 5078 goes on, separately requiring "firearm industry member[s]" to "take reasonable precautions to ensure [they] do[] not sell or distribute a firearm industry product to a downstream distributor or retailer of firearm industry products that fails to establish and implement reasonable controls." §2(5). Unlike with the "reasonable controls" provision, SB 5078 provides no definition, not even a gloss, for what constitutes "reasonable precautions" that could violate §2(5). Yet failing to take such undefined precautions before selling or distributing a product to a distributor or retailer who themselves fail to take certain unnamed reasonable controls is grounds for liability for supposedly creating or contributing to a public nuisance.

SB 5078 also bars industry members from "manufactur[ing], … market[ing], … or offer[ing] for … sale a firearm industry product" if that product is "[d]esigned, sold, or marketed in a manner that is targeted at minors"—even though, under Washington law, minors may possess a firearm in many circumstances, including "target shooting at an established range" or "where the discharge of a firearm is permitted, is not trespassing, and the person … is under the supervision of a parent, guardian, or other adult approved for the purpose by the parent or guardian," Wash. Rev. Code §9.41.042(2), (5)(b). SB 5078 thus would prohibit, for example, the

MOTION FOR PRELIMINARY INJUNCTION - 8

designing of a firearm that is designed to be safer for lawful use by minors.

SB 5078 expands the scope of public nuisance law in other unprecedented ways as well. Most notably, it relaxes "proximate cause" to mean something far different than traditional proximate cause. Under SB 5078, "[a] firearm industry member's conduct … constitutes a proximate cause of the public nuisance if the harm is a reasonably foreseeable effect of the conduct, notwithstanding any intervening actions, including but not limited to criminal actions by third parties." §2(9). The statute also removes the need to prove intent: Liability may attach without regard to whether "the firearm industry member acted with the purpose to engage in a public nuisance or otherwise cause harm to the public." §2(13).

SB 5078 allows private parties to sue under its terms pursuant to Washington's general public nuisance law. *See* §2(12); *see* Wash. Rev. Code §7.48.210 (a "private person may maintain a civil action for a public nuisance, if it is specially injurious to himself or herself"). The remedies provided for under that chapter include "an action for damages," to "have the defendant enjoined," or an "order … to abate the nuisance at the expense of the defendant." Wash. Rev. Code §§7.48.010, .020, .030.

SB 5078 also authorizes the Attorney General to "commence an action" in his own name. §2(10). In addition to the "remedies available for violations of this chapter," the Attorney General may seek "punitive damages up to an amount not to exceed three times the actual damages sustained by the state, reasonable attorneys' fees, and costs of the action." §2(10). These penalties apparently apply, moreover,

MOTION FOR PRELIMINARY INJUNCTION - 9

even if the relevant conduct occurred entirely out of state, will continue to occur entirely out of state, and was and is protected by the Constitution and/or necessary to ensure that law-abiding citizens may exercise their constitutional rights.

**ARGUMENT**

"Pursuant to Federal Rule of Civil Procedure 65, the Court may grant preliminary injunctive relief in order to prevent 'immediate and irreparable injury.'" *Washington v. DeVos*, 466 F.Supp.3d 1151, 1161 (E.D. Wa. 2020) (quoting Fed. R. Civ. P. 65(b)(1)(A)).  The party seeking the injunction must show a likelihood of success on the merits, irreparable harm absent preliminary relief, that the balance of the equities tips in its favor, and that the public interest favors an injunction.  *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 688 (9th Cir. 2022).

**I.    Plaintiff Is Likely To Succeed On The Merits.**

**A.    The PLCAA Preempts SB 5078.**

The PLCAA imposes clear restrictions:  A "civil liability action … against a manufacturer or seller of [firearms and related products]" that seeks "damages … or other relief, resulting from the criminal or unlawful misuse of a qualified product by … a third party" "may not be brought in any Federal or State court."  15 U.S.C. §§7902(a), 7903(5)(A).  The lawsuits that SB 5078 authorizes do not just vaguely resemble the "civil liability action[s]" that Congress enacted the PLCAA to preempt; they are exactly what Congress set out to inter.  On its face, SB 5078 empowers the state to sue licensed manufacturers and sellers of firearms for harms caused by third

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

parties who misuse their products.  Yet the PLCAA's unambiguous goal is to foreclose efforts to impose liability on those engaged in lawful commerce in firearms through "theories without foundation in hundreds of years of the common law and jurisprudence of the United States." 15 U.S.C. §7901(a)(7).  Washington's apparent belief that it may revive exactly those kinds of suits through the simple expedient of codifying them in a statute thus must be met with greatest of skepticism and confirmed by the plainest of text.  Washington cannot meet that burden.

The state seems to think that SB 5078 is saved from preemption by the PLCAA's so-called "predicate exception," i.e., 15 U.S.C. §7903(5)(A)(iii), which exempts actions "in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." *See* SB 5078 §1(4).  But as the Ninth Circuit has already recognized, *see Ileto*, 565 F.3d at 1134, the predicate exception cannot sensibly be read to exempt any and all statutes that apply to the firearms industry, as such a capacious reading "would allow the predicate exception to swallow the statute," *City of N.Y. v. Beretta*, 524 F.3d 384, 403 (2d. Cir. 2008).  The exception is instead best read to exempt only actions predicated on laws that impose concrete obligations or prohibitions that industry members can actually knowingly violate, not laws that merely impose general duties of care, and do away with proximate cause for good measure.  That conclusion follows directly from text, context, and common sense.

MOTION FOR PRELIMINARY INJUNCTION - 11

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Start with the text.  *Contra* SB 5078 §1(4), the predicate exception does not "provide[]"—let alone "expressly"—that "causes of action may proceed" so long as they allege any violation of any "statute[] regulating the sale and marketing of firearms and related products."  What it actually says is that it saves "an action" from preemption only to the extent the action alleges that "a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought."  15 U.S.C. §7903(5)(A)(iii).  That language presumes some requirement or obligation sufficiently concrete that an industry member can actually knowingly violate it at the time of manufacture or sale—as a district court judge in New Jersey recently concluded when confronted with a similar effort to end-run the PLCAA.  *See Nat'l Shooting Sports Found. v. Platkin*, 2023 WL 1380388, at *6 (D.N.J. Jan. 31, 2023) (granting preliminary injunction for NSSF against similar law) ("The knowingly requirement of the predicate exception necessitates the actor to have a sufficiently concrete duty to have knowingly violated a relevant statute.").

The illustrative examples Congress supplied in the predicate exception itself, *see* 15 U.S.C. §7903(5)(A)(iii)(I)–(II), confirm the point.  "The general language … []providing that predicate statutes are those 'applicable to' the sale or marketing of firearms[] is followed by the more specific language referring to statutes imposing record-keeping requirements on the firearms industry, 15 U.S.C. §7903(5)(A)(iii)(I), and statutes prohibiting firearms suppliers from conspiring with or aiding and

abetting others in selling firearms directly to prohibited purchasers, 15 U.S.C. §7903(5)(A)(iii)(II)." *Beretta*, 524 F.3d at 402. "Thus," under basic principles of interpretation, the general "applicable to" language in §7903(5)(A)(iii) must be "construed to embrace only objects similar to those enumerated by" the two specific examples that follow. *Id.* (quoting *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 384 (2003)); *accord Platkin*, 2023 WL 1380388, at *6. "Indeed, if *any* statute that 'could be applied' to the sales and manufacturing of firearms qualified as a predicate statute, there would be no need to list examples at all." *Ileto*, 565 F.3d at 1134; *see id.* ("[T]he general term should be defined in light of the specific examples provided." (alteration in original) (quoting *Cal. State Legis. Bd. v. Dep't of Transp.*, 400 F.3d 760, 763 (9th Cir. 2005))).

Notably, both of the examples Congress provided require a violation of a concrete obligation or prohibition. The first requires a knowing violation of a recordkeeping requirement, *e.g.*, knowingly entering false information, knowingly failing to enter information required at the time of the sale, or aiding, abetting, or conspiring with someone to make a false statement material to the lawfulness of a sale. 15 U.S.C. §7903(5)(A)(iii)(I). The second requires a knowing violation of the obligation not to knowingly facilitate straw purchases, *e.g.*, by aiding, abetting, or conspiring to sell a firearm to someone the seller knows or has reasonable cause to believe is buying it for a prohibited person. *Id.* §7903(5)(A)(iii)(II). Those examples look nothing like SB 5078, which effectively just commands industry members to

MOTION FOR PRELIMINARY INJUNCTION - 13

conduct their operations "reasonably," without giving any guidance as to which controls and procedures are "reasonable," and which could cover even circumstances that become evident only long after the manufacture or sale.

The PLCAA's expressly enumerated findings reinforce the conclusion that the predicate exception applies only to laws that impose concrete obligations or prohibitions, not duties of care. As the statute explains, its chief aim is to foreclose efforts to hold those engaged in "the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products" "liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended." 15 U.S.C. §7901(a)(5). And as the Second Circuit has explained, the term "lawful" is best understood in light of statutory context to mean "activities having been done in compliance with statutes like those described in" the immediately preceding finding: "the Gun Control Act of 1968, the National Firearms Act, and the Arms [Export] Control Act." *Beretta*, 524 F.3d at 402–03; *see* 15 U.S.C. §7901(a)(4). Those statutes do not impose amorphous commands to manufacture and sell firearms "reasonably." They are comprehensive regulatory regimes that impose concrete obligations and prohibitions with which industry members can confidently ensure compliance (or, conversely, can sensibly be said to violate *knowingly*) in real time.

Moreover, whereas the predicate exception is limited to cases in which an industry member's knowing "violation" of a statute "was a proximate cause of the

MOTION FOR PRELIMINARY INJUNCTION - 14

harm for which relief is sought," 15 U.S.C. §7903(5)(A)(iii), SB 5078 does not require proximate cause in the traditional sense. Rather, proximate cause is simply deemed satisfied whenever "the harm" for which redress is sought "is a reasonably foreseeable effect of the [industry member's] conduct, *notwithstanding any intervening actions, including but not limited to criminal actions by third parties*," that are more directly responsible. §2(9) (emphasis added). That is not what Congress had in mind. The whole point of the PLCAA is to prevent states from using tort law to make industry members pay for harms caused by "criminal or unlawful misuse of" firearms by "third part[ies]." 15 U.S.C. §7903(5)(A). Indeed, the PLCAA was enacted against the backdrop of state and local government suits that tried to impose liability on firearm industry members precisely by shirking traditional proximate cause. *See, e.g.*, *Camden*, 273 F.3d a 540–41; *Philadelphia*, 277 F.3d at 419–20. That is why the predicate exception makes clear that proximate cause is non-negotiable. And under true proximate cause, "foreseeability alone is not sufficient," *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 201 (2017); rather, there must be a "direct relation between the injury asserted and the injurious conduct alleged," *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). SB 5078 explicitly discards any such inquiry. §2(9); *see also* §2(13) (intent not required).

The state seems to think that codification changes everything. But as the Ninth Circuit made clear in *Ileto*, "the text and purpose of the PLCAA show[] that Congress intended to preempt general tort theories of liability even in jurisdictions

MOTION FOR PRELIMINARY INJUNCTION - 15

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

… that have codified such causes of action" in statutes applicable to the firearms industry. 565 F.3d at 1136. Indeed, *Ileto* squarely held that the predicate exception does not save "'classic negligence and nuisance'" claims just because a state "codifie[s] such causes of action." *Id.* at 1135–36. For good reason: The problem Congress had with the amorphous suits it enacted the PLCAA to stamp out was not that they were brought pursuant to the common law; it was that they sought to "expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States" (until now, apparently) and constituted an "abuse of the legal system." 15 U.S.C. §7901(a)(6)–(a)(7). That is why Congress opted "[t]o prohibit [such] causes of action" entirely, *id.* §7901(b)(1), not just when they are brought pursuant to the common law.

The absence of any distinction in the PLCAA's findings and purposes between common-law and statutory nuisance claims is all the more telling given that several of the cases Congress enacted the law to shut down involved both common-law and statutory nuisance claims. *See, e.g.*, *Ileto*, 565 F.3d at 1130; *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192, 194 (N.Y. App. Div. 2003). Yet when Congress went to the trouble of articulating what it enacted the PLCAA to accomplish, it said not a word about saving novel expansions of the common law that have the imprimatur of the state legislature, whether through a firearms-specific statute or otherwise. Congress instead explained that the goal of PLCAA is "[t]o prohibit causes of action against [firearms industry members] for the harm solely

MOTION FOR PRELIMINARY INJUNCTION - 16

caused by the … unlawful misuse of [their products] by others." 15 U.S.C. §7901(b)(1).  The notion that states can avoid that prohibition simply by codifying the same "causes of action" the PLCAA was enacted to "prohibit" beggars belief. Just as it does not "hide elephants in mouseholes," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001), Congress does not pass laws that expressly say what they are after, but contain trap doors making them trivially easy to evade.

In short, "[t]o read [SB 5078] as fitting within the predicate exception would run afoul of the goals of the PLCAA and would, in fact, 'gut the PLCAA[.]'" *Platkin*, 2023 WL 1380388, at *7.  SB 5078 is preempted.

### B.    SB 5078 Violates the Dormant Commerce Clause.

The Commerce Clause prohibits each state from "control[ling] commerce occurring wholly outside [its] boundaries."  *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 335–36 (1989) (footnote omitted).  Yet SB 5078 does just that.  By its terms, *any* "firearm industry member," not just one that operates in Washington, can be held liable based on its "sale, manufacturing, distribution, importing, or marketing"— even if all of that conduct takes place entirely outside of Washington.  §2(3); *see* Decl. of Jeff Reh ¶6 ("Beretta U.S.A. Corp does not have any manufacturing operations in Washington" and "does not sell directly to any civilian in Washington"); Decl. of Susan Cupero ¶7 (same for Smith & Wesson).

To be sure, SB 5078 requires that at least one of an industry member's products be "used or possessed in this state" and that such in-state use or possession

MOTION FOR PRELIMINARY INJUNCTION - 17

"was reasonably foreseeable." §2(1)(b)(iii).  But the fact that a product made or sold out of state is destined to wind up in the state does not give a state authority to reach out and regulate its out-of-state manufacture or sale.  That has been settled law for nearly 100 years.  *See Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 521–23 (1935) (holding that New York Milk Control Act could not constitutionally be applied to a wholesale transaction in Vermont); *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 491 (4th Cir. 2007) (explaining that *Baldwin* statute "applied only to milk that would eventually be sold to New York consumers").  And it remains the law of this Circuit today.  *See Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1322 (9th Cir. 2015) (en banc) (holding that California statute requiring fine art sellers to pay a royalty to the artist "violate[d] the 'dormant' Commerce Clause" "as applied to out-of-state sales by California residents").

In fact, SB 5078 is almost exactly like an Indiana law that the Seventh Circuit held unconstitutional in *Legato Vapors, LLC v. Cook*, 847 F.3d 825 (7th Cir. 2017). That law "impos[ed] detailed requirements … on out-of-state manufacturing operations" for e-cigarettes, "dictat[ing] how out-of-state manufacturers must build and secure their facilities, operate assembly lines, clean their equipment, and contract with security providers, if any of their products are sold in Indiana."  *Id.* at 827, 830; *see also Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 612–16 (9th Cir. 2018) (enjoining California law purporting to "dictate the method by which" companies treated medical waste "outside of California").  SB 5078 is remarkably

MOTION FOR PRELIMINARY INJUNCTION - 18

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

similar—except SB 5078 is even worse.  For one thing, whereas the Indiana law in *Legato Vapors* (and the state laws struck down in *Healy* and *Baldwin*) applied out of state only vis-à-vis conduct that was directed at the state, here SB 5078 reaches out and authorizes Washington to control how a manufacturer in (say) Wyoming operates its business if a criminal illegally brings a gun into Washington and misuses it.  That makes the Commerce Clause problem especially stark, as does the fact that, unlike in *Legato Vapors*, SB 5078's "reasonable controls" provision has not even "detailed" what out-of-state manufacturers and dealers must do to comply.

What is more, SB 5078 adds an additional layer of extraterritorial regulation to the "reasonable controls" requirement.  In addition to dictating (albeit nebulously) the method by which out-of-state firearm manufacturers must conduct *their own* operations in the "reasonable controls" provision, *see* §2(4), SB 5078 also requires licensed industry members to "take reasonable precautions" to ensure that *other parties with whom they deal* also employ "reasonable procedures," §2(5), even if all parties involved are located outside of Washington and even if all transactions between the out-of-state industry member and its "downstream distributor[s] or retailer[s]" also take place out of state.  The statute thus regulates purely out-of-state transactions and imposes roaming obligations on out-of-state parties to ensure that their out-of-state contractual counterparts comply with Washington's view of what is reasonable.  None of that is consistent with the Constitution.

Under settled precedent, a state law that imposes liability for wholly out-of-

MOTION FOR PRELIMINARY INJUNCTION - 19

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

state conduct "exceeds the inherent limits of the enacting State's authority" and is per se invalid. *Healy*, 491 U.S. at 336. That rule against extraterritorial state regulation applies with full force "whether or not the [out-of-state] commerce has effects within the State," *id.*, even if the state law is intended to protect the health and safety of state residents, *see Baldwin*, 294 U.S. at 521–23, even if the law is "triggered only by" third-parties' conduct "within the State," *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 580 (1986), and even if the party whose out-of-state conduct the state wants to regulate does other business in the state or is at home there, *see Sam Francis*, 784 F.3d at 1321–22. SB 5078 is thus unconstitutional under black-letter law because and to the extent that it "reach[es] beyond the borders of [Washington] [to] control transactions that occur wholly outside of the State." *Daniels Sharpsmart*, 889 F.3d at 616. After all, imposing state-law liability for actions taken outside the regulating state is the definition of unconstitutional extraterritorial state regulation.

### C.    SB 5078 Violates the First Amendment.

In addition to regulating the manufacture and sale of constitutionally protected products, SB 5078 regulates—indeed, allows courts to enjoin—constitutionally protected speech. SB 5078 subjects "firearm industry member[s]" to liability for "contribut[ing]" to a public nuisance "through … marketing" that the state deems "unreasonable." §2(3). It orders them to employ "reasonable controls" as to their "marketing," (whatever that means), §2(4), and requires them to take "reasonable

MOTION FOR PRELIMINARY INJUNCTION - 20

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

precautions" to ensure that their downstream distributors and retailers do the same, §2(5).  And it prohibits them from "market[ing] … a firearm industry product that is … [d]esigned, sold, or marketed in a manner that is targeted at minors," *even if the product is one that minors may lawfully use in Washington*.  §2(6)(b).  The statute thus plainly—and unconstitutionally—restricts protected speech.

First, SB 5078 undoubtedly regulates speech based on its content.  The statute on its face does not apply to all marketing; it applies only to "marketing *of a firearm industry product*."  §2(1)(a) (emphasis added).  Indeed, SB 5078 does not even apply to all speech about firearms; it applies only to the speech of those "engaged in the wholesale or retail sale, manufacturing, distribution, importing, or marketing of a firearm industry product."  §2(1)(a).  What is more, the statute fixates on gun-related speech by gun-related actors because their speech is uniquely likely to communicate a *viewpoint* that Washington apparently disfavors.  *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011).  Yet the topics and views that Washington has singled out do not fall into any "well-defined and narrowly limited classes of speech" not protected by the First Amendment, such as fighting words, obscenity, and the like. *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 791 (2011).

To be sure, the First Amendment does not preclude liability for false, deceptive, or otherwise "misleading" commercial speech.  *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980).  But SB 5078 does not purport to target false or misleading speech.  It imposes liability for speech

MOTION FOR PRELIMINARY INJUNCTION - 21

about lawful (and constitutionally protected) products even when that speech is truthful.  The words "false," "misleading," and "deceptive" appear nowhere in the statute, which even explicitly contemplates that compliance with all laws relating to the marketing of firearms (or any other product) is not a defense, *see* §2(2)(f)(iii). Advertisements with entirely accurate specifications of lawful products thus may trigger liability if they are deemed to be "unreasonable" and to have "contribute[d]" to a nuisance.  Yet under black-letter law, truthful speech promoting lawful products enjoys full constitutional protection, even if the products have deleterious health effects.  *See, e.g.*, *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001) (tobacco); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 (1996) (liquor).

SB 5078 thus strikes at the heart of the First Amendment.  After all, laws "that target truthful, nonmisleading commercial messages rarely protect consumers from [the] harms" that may justify greater regulation of commercial speech as a general matter, *44 Liquormart*, 517 U.S. at 502–03—namely, its "potential to mislead," *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 494 (1995) (Stevens, J., concurring in the judgment).  As the Supreme Court made clear in *Sorrell*, "the State may not seek to remove a popular but disfavored product from the marketplace by prohibiting truthful, nonmisleading advertisements" just because it "finds expression too persuasive."  564 U.S. at 577–78.  That is true *a fortiori*, of course, when the disfavored product is not just lawful, but one the Constitution expressly protects. *See* U.S. Const. amend. II (securing "the right of the people to keep and bear Arms").

MOTION FOR PRELIMINARY INJUNCTION - 22

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

All of that means that Washington must affirmatively prove that SB 5078 satisfies heightened scrutiny. That, it cannot do. Despite ostensibly being motivated by a desire to resolve a purported epidemic of gun violence, SB 5078 does nothing to police the conduct of criminals who misuse firearms. Nor does it regulate vast swaths of speech—action films, violent video games, direct incitements to violence, and countless other forms of expression—that may actually encourage criminal gun violence. SB 5078 is thus "wildly underinclusive." *Brown*, 564 U.S. at 801–02.

And far from being narrowly tailored or even closely drawn to achieve a compelling interest, SB 5078 is radically overbroad: It imposes sweeping liability for *any* firearms marketing that could later be thought to "contribute to a public nuisance" in Washington, even if it is nothing more than entirely truthful, non-misleading speech. Indeed, that is the whole point of the statute. The only reason to erect such a standardless restriction is to chill the right to encourage the exercise of Second Amendment rights in a way that is not to Washington's liking.

And that is to say nothing of SB 5078's additional prohibition on *any* marketing "targeted at minors." §2(6). On its face, that provision prohibits not only marketing of firearms that are specifically designed to be safely used by minors and that are lawful for minors to use in Washington in a number of a contexts, but also marketing for conduct that Washington *explicitly marks out as lawful and laudable*, such as minors' "attendance at a hunter's safety course or a firearms safety course," Wash. Rev. Code §9.41.042(1). *See* Reh Decl. ¶14; Cupero Decl. ¶13. Apparently,

MOTION FOR PRELIMINARY INJUNCTION - 23

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Washington thinks that *it* can tell parents which firearms are safest for their teenage daughter to use for hunting or sport shooting without problem, but it is (somehow) a public nuisance if industry members who actually make the products do the same. It is hard to understand how that prohibition would survive even rational-basis view. It has no chance of surviving heightened scrutiny.

In addition to flunking ordinary First Amendment review, SB 5078 also suffers from a fatal vagueness problem with respect to the speech it purports to police. Vagueness "raises special First Amendment concerns because of its obvious chilling effect on free speech." *Reno v. ACLU*, 521 U.S. 844, 871–72 (1997). SB 5078 makes it impossible for regulated parties to tell what speech is and is not permitted, leaving them with no realistic choice but to err on the side of refraining from exercising their First Amendment rights (which here are doubly protected, as they are in aid of the exercise of others' Second Amendment right). *See* Reh Decl. ¶11; Cupero Decl. ¶10. SB 5078 is thus bound to "provoke uncertainty among speakers," *Reno*, 521 U.S. at 871, as the statute's abstractions do not articulate *at all*—let alone with "narrow specificity," *see NAACP v. Button*, 371 U.S. 415, 433 (1963)—what may give rise to liability.  Any ad for a lawful product anywhere can be grounds for liability if it is later deemed to have indirectly contributed to gun-related problems in Washington, leaving any "legitimate" sweep of the marketing provisions miniscule.

In short, SB 5078's marketing provisions "prohibit or chill" much protected expression, *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002), destroying

MOTION FOR PRELIMINARY INJUNCTION - 24

the "breathing space" that "the First Amendment needs," *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973).  They cannot stand.

### D.    SB 5078 Is Void for Vagueness.

For many of the same reasons that SB 5078 is unconstitutionally vague with respect to protected speech, it is also unconstitutionally vague under the Due Process Clause with respect to all the conduct it polices.  A law that forbids or requires an act "in terms so vague that men of common intelligence must necessarily guess at its meaning … violates the first essential of due process," *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926), as does a law with terms so malleable that it authorizes "arbitrary [or] discriminatory enforcement," *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  For all the reasons already discussed, "[t]he vice of unconstitutional vagueness is further aggravated" in the First Amendment context, *Cramp v. Bd. of Pub. Instruction of Orange Cnty.*, 368 U.S. 278, 287 (1961).  But it is not just First Amendment concerns that demand regulation with especial precision; a more "stringent" vagueness test applies for statutes that "threaten[] to inhibit the exercise of constitutionally protected rights" of any kind, as well as for statutes that impose "quasi-criminal" penalties, whether they regulate speech or not. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982).

The most protective vagueness standard known to law thus applies here several times over.  SB 5078 flunks that test.  Its modest effort to supply a definition for "reasonable controls" only compounds the confusion:  Rather than identify a

MOTION FOR PRELIMINARY INJUNCTION - 25

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

firearm industry member's concrete obligations with specificity, SB 5078 issues a sweeping command that industry members adopt any and all procedures "designed and implemented to" "prevent" or "ensure" a litany of abstract goals including (but not limited to) preventing the loss or theft of firearms, preventing illegal arms trafficking, and so on. §2(1)(f). That is exacerbated by the fact that, in determining what qualifies as a "public nuisance," law-abiding industry members must predict abstractions such as whether an act or omission "annoys … the comfort" or "offends decency." Wash. Rev. Code §7.48.120. And it only gets worse from there: the statute provides absolutely no guidance on what constitutes a "reasonable precaution" to ensure that products are not sold to non-compliant *downstream* distributors or retailers, §2(5), leaving industry members with no way to know whether their precautions will subsequently be deemed sufficiently "reasonable."

Simply put, SB 5078 is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Due process demands far more.

### E.    SB 5078 Violates the Second Amendment.

Commerce in arms is an essential component of the Second Amendment right to keep and bear arms; after all, "the core Second Amendment right 'wouldn't mean much' without the ability to acquire arms." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017). And long-settled precedent holds that a state may not thwart fundamental rights by attacking the means by which they are exercised. *See Luis v. United States*, 578 U.S. 5, 26–27 (2016) (Thomas, J., concurring).

MOTION FOR PRELIMINARY INJUNCTION - 26

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

SB 5078 infringes that essential component of the Second Amendment right to keep and bear arms.   Under *Bruen*, a law that regulates Second Amendment activity is unconstitutional unless the state can prove that it "is consistent with this Nation's historical tradition."   *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111, 2126 (2022).   But Washington cannot "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.   In fact, "[t]o extend public nuisance law to embrace the manufacture of handguns would be unprecedented." *Camden*, 273 F.3d a 540–41.   Congress itself recognized this, finding that efforts to make industry members pay for harms caused by criminals who misuse their products are "based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States and do not represent a bona fide expansion of the common law." 15 U.S.C. §7901(a)(7).

SB 5078 thus cannot be justified by pointing to centuries-old public nuisance law and claiming that the novel liability the new statute imposes is close enough.  As *Bruen* made clear, "courts should not 'uphold every modern law that remotely resembles a historical analogue,' because doing so 'risk[s] endorsing outliers that our ancestors would never have accepted.'" 142 S.Ct. at 2133 (alteration in original). And under traditional public-nuisance doctrine—which is "confined to real property and violations of public rights" and which does not allow suits for damages resulting from criminals' unlawful acts—defendants "are not liable" unless they "control the misconduct of third parties" more immediately responsible for the harms for which

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

redress is sought.  *Camden*, 273 F.3d at 541 (per curiam).  The state's decision "to expand state public nuisance law" to impose exactly that sort of novel liability, *see id.* at 542, cannot survive after *Bruen*.  Indeed, it may not even survive due process review; the statute is designed to assign blame where the "causal chain is simply too attenuated to attribute sufficient control to the [gun industry members] to make out a public nuisance claim."  *Camden*, 273 F.3d at 541.  It is hard to see how that comports with basic notions of due process.  *See Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 838 (1996) ("Somewhere a point will be reached when courts will agree that the link has become too tenuous—that what is claimed to be consequence is only fortuity.").  In all events, SB 5078 plainly violates the Second Amendment.

## II.    The Remaining Factors All Favor Injunctive Relief.

Those constitutional injuries are enough in and of themselves to satisfy the irreparable-injury factor, especially given the significant chilling effect SB 5078 will have on constitutionally protected speech.  *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).  But they do not stand alone.

First, as noted, the PLCAA confers not just a defense against liability, but an immunity from suit.  No court can make NSSF's members whole for having to defend against suits that should never have been brought in the first place.

Second, the process of trying to ascertain what SB 5078's vague terms mean and what steps, if any, industry could try to take today to avoid being deemed to have acted unreasonably will be considerable—and, thanks to the Eleventh

MOTION FOR PRELIMINARY INJUNCTION - 28

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Amendment, wholly unrecoverable.  Thus, while economic injury typically is not irreparable (because it can be remedied after the fact), it *is* irreparable when, as here, the defendants are cloaked in sovereign immunity.  Every single cent lost as a result of trying to comply with (or violating) SB 5078 is unrecoverable as a matter of law, thanks to the Eleventh Amendment.  That is irreparable harm.  *See Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851–52 (9th Cir. 2009), *vacated on other grounds by Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012).

Third, SB 5078 will inflict on-the-ground injuries for which no remedy will be available as a matter of constitutional law.  SB 5078 will inevitably result in "the constriction of [the] market" for lawful firearms and related products, which is a textbook economic "injury."  *Craig v. Boren*, 429 U.S. 190, 194 (1976); *see* Reh Decl. ¶¶13-16; Cupero Decl. ¶¶14-15.  That too is irreparable injury in this context.

The equities and the public interest favor an injunction as well.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (these factors "merge when the Government is the opposing party").  Defendants cannot make any serious argument that they (or the state) will suffer harm as a result of an injunction, as it is black-letter law that government defendants "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Moreover, SB 5078 encroaches on federal authority by flouting Congress' express purposes in passing the PLCAA.  *See, e.g.*, *United States v. Oakland*

MOTION FOR PRELIMINARY INJUNCTION - 29

*Cannabis Buyers' Coop.*, 532 U.S. 483, 497–98 (2001) (the public interest favored an injunction where the challenged state law conflicted with "Congress' policy choice, articulated in a statute").  SB 5078 foments interstate conflict and burdens interstate commerce by setting Washington up to judge lawful business practices in other states.  *See, e.g.*, *Hazardous Waste Treatment Council v. South Carolina*, 945 F.2d 781, 795 (4th Cir. 1991) (the public interest favored an injunction where the challenged state law burdened interstate commerce).  And it tramples on individual rights—the right to keep and bear arms, the freedom of speech, the privilege of pursuing a common calling, and more.  *See, e.g.*, *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (the "public interest and the balance of the equities favor prevent[ing] the violation of a party's constitutional rights").  The public interest and the balance of the equities do not favor in the slightest keeping in place a statute that poses such a grave threat to fundamental constitutional rights.

## CONCLUSION

The Court should grant a preliminary injunction.  And because the issues are purely legal, there is no reason to delay entering judgment in Plaintiff's favor.

MOTION FOR PRELIMINARY INJUNCTION - 30

1    DATED this 4th day of May, 2023.

2                                          CORR CRONIN LLP

3

4                                          *s/ Steven W. Fogg*
                                           Steven W. Fogg, WSBA No. 23528
5                                          CORR CRONIN LLP
                                           1015 Second Avenue, Floor 10
6                                          Seattle, Washington  98104-1001
                                           Ph: (206) 625-8600 | Fax: (206) 625-0900
7                                          sfogg@corrcronin.com

8
                                           Paul D. Clement *(pro hac vice pending)*
9                                          Erin E. Murphy *(pro hac vice pending)*
                                           Matthew D. Rowen *(pro hac vice pending)*
10                                         Mariel A. Brookins *(pro hac vice pending)*
                                           CLEMENT & MURPHY, PLLC
11                                         706 Duke Street
                                           Alexandria, VA 22314
12                                         Ph: (202) 742-8900
                                           paul.clement@clementmurphy.com
13                                         erin.murphy@clementmurphy.com
                                           matthew.rowen@clementmurphy.com
14                                         mariel.brookins@clementmurphy.com

15
                                           *Attorneys for Plaintiff*
16

17

18

19

20

21

22

23

24

25

MOTION FOR PRELIMINARY INJUNCTION - 31

1

## **CERTIFICATE OF SERVICE**

2

3        I hereby certify that on (Date), I electronically filed the foregoing with the
Clerk of the Court using the CM/ECF System, which in turn automatically
generated a Notice of Electronic Filing (NEF) to all parties in the case who are
registered users of the CM/ECF system. The NEF for the foregoing specifically
identifies recipients of electronic notice.

4

5

6

7        DATED at Seattle, Washington on 4th day of May, 2023.

8

9                                *s/ Megan Johnston*
                                Megan Johnston, Legal Assistant
10                               Corr Cronin LLP
                                1015 Second Avenue, 10th Floor
11                               Seattle, WA 98104
                                Phone: (206) 625-8600
12                               Email: mjohnston@corrcronin.com

13

14

15

16

17

18

19

20

21

22

23

24

25

MOTION FOR PRELIMINARY INJUNCTION - 32