1

Jessica L. Goldman, WSBA #21856
SUMMIT LAW GROUP, PLLC

2

315 Fifth Avenue South, Suite 1000
Seattle, WA  98104-2682

3

(206) 676-7000
jessicag@summitlaw.com

4

*Attorneys for Amici Curiae*

5

*Everytown for Gun Safety, Giffords Law*
*Center to Prevent Gun Violence, and*

6

*Brady Center to Prevent Gun Violence*

7

8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

9

10

NATIONAL SHOOTING SPORTS
FOUNDATION, INC.,

11

CASE NO. 2:23-cv-00113-MKD

Plaintiff,

12

13

v.

14

15

ROBERT W. FERGUSON,
ATTORNEY GENERAL OF THE
STATE OF WASHINGTON,

16

17

Defendant.

18

19

20

**[PROPOSED] BRIEF OF GUN VIOLENCE PREVENTION GROUPS**
**AS AMICI CURIAE IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS AND OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

21

22

23

24

25

26

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE
[2:23-cv-00113-MKD]

**TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENTS ..................................................... VI

INTERESTS OF AMICI CURIAE........................................................................1

ARGUMENT .......................................................................................................1

I.     BY IMPOSING LIABILITY ON BAD ACTORS IN THE GUN INDUSTRY FOR THEIR OWN IRRESPONSIBLE PRACTICES, SSB 5078 ADDRESSES THEIR PIVOTAL ROLE IN FACILITATING GUN VIOLENCE IN WASHINGTON. ..........................2

II.    WHAT CONSTITUTES LAWFUL AND REASONABLE CONDUCT UNDER SSB 5078 IS KNOWN AND KNOWABLE BY GUN INDUSTRY ACTORS........................................................7

III.   SSB 5078 DOES NOT VIOLATE THE SECOND AMENDMENT..........13

CONCLUSION ..................................................................................15

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - i
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5  *Def. Distributed v. Bonta*,
6     No. 2:22-cv-6200, 2022 WL 15524977 (C.D. Cal. Oct. 21, 2022).
      *adopted by* 2022 WL 15524983 (C.D. Cal. Oct. 24, 2022)................................13

7  *District of Columbia v. Heller*,
8     554 U.S. 570 (2008)...........................................................................................14

9  *Gazzola v. Hochul*,
10    No. 1:22-cv-01134, 2022 WL 17485810 (N.D.N.Y. Dec. 7, 2022),
11    *appeal docketed*, No. 22-3068 (2d Cir. Dec. 5, 2022)......................................13

12 *Kennedy v. Bremerton School District*,
      142 S. Ct. 2407 (2022)......................................................................................13

13 *Leo Combat, LLC v. U.S. Dep't of State*,
14    No. 15-cv-2323-NYW, 2016 WL 6436653 (D. Colo. Aug. 29,
15    2016) ...................................................................................................................13

16 *In re Luckygunner LLC*,
17    No. 14-21-00194, 2021 WL 1904703 (Tex. Ct. App. May 12,
      2021) .....................................................................................................................5

18 *McDonald v. City of Chicago*,
19    561 U.S. 742 (2010)...........................................................................................14

20 *NAACP v. AcuSport, Inc.*,
21    271 F. Supp. 2d 435 (E.D.N.Y. 2003) ............................................................5, 9

22 *Nat'l Ass'n for Gun Rights v. City of San Jose*,
23    618 F. Supp. 3d 901 (N.D. Cal. 2022) ..............................................................12

24 *New York State Rifle & Pistol Ass'n v. Bruen*,
25    142 S. Ct. 2111 (2022).................................................................................12, 14

26

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - ii
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

2

# TABLE OF AUTHORITIES
(continued)

Page(s)

3

4

5

*Or. Firearms Fed'n v. Brown*,
No. 2:22-cv-01815, 2022 WL 17454829 (D. Or. Dec. 6, 2022),
*appeal dismissed*, No. 22-36011, 2022 WL 18956023 (9th Cir.
Dec. 12, 2022).............................................................................................12

6

7

*Teixeira v. Cnty. of Alameda*,
873 F.3d 670 (9th Cir. 2017) (en banc) ............................................................13

8

9

*United States v. Cooper*, No. 2:23-mj-00174 (W.D. Wash. Apr. 17,
2023) ..............................................................................................................4

10

11

*United States v. Tilotta*,
No. 3:19-cr-04768, 2022 WL 3924282 (S.D. Cal. Aug. 30, 2022)...................13

12

**Statutes**

13

Protection of Lawful Commerce in Arms Act..........................................................1

14

15

Substitute Senate Bill 5078
68th Leg., Reg. Sess. (Wash. 2023)........................................................1, 2, 3, 4

16

§ 1(1) .......................................................................................................3
§ 1(3) ....................................................................................................2, 7

17

§ 2(1)(f) .................................................................................................3, 4
§ 2(1)(g) ....................................................................................................4

18

§ 2(4) ........................................................................................................7

19

§ 2(5) ........................................................................................................7
§ 2(11) .......................................................................................................6

20

§ 4.............................................................................................................3

21

**Other Authorities**

22

23

24

25

*Agreement Between Smith & Wesson and the Departments of the
Treasury and Housing and Urban Development, Local
Governments and States* (Mar. 7, 2000), *available at*
https://www.nraila.org/articles/20000317/smith-wesson-
settlement-agreement ..................................................................................11, 12

26

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - iii
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Anthony A. Braga et al., *Underground Gun Markets and the Flow of Illegal Guns into the Bronx and Brooklyn: A Mixed Methods Analysis*, 98 J. URBAN HEALTH 596 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8566688/ ...............................4

ATF, *Fact Sheet – National Tracing Center* (Apr. 2023), https://www.atf.gov/resource-center/fact-sheet/fact-sheet-national-tracing-center ...............................................................................................10

Cornelia Pechmann et al., *Impulsive and Self-Conscious: Adolescents' Vulnerability to Advertising and Promotion*, J. PUB. POLICY & MARKETING (2005), *available at* https://journals.sagepub.com/doi/10.1509/jppm.2005.24.2.202 .........................6

Daniel Semenza & Richard Stansfield, *Curbing the Illicit Market: Enhancing Firearm Regulations to Reduce Gun Violence* ROCKEFELLER INSTIT. OF GOV'T (May 2023), *available at* https://rockinst.org/issue-area/curbing-the-illicit-market-enhancing-firearm-regulations-to-reduce-gun-violence ......................................2

DOJ, *Gun Violence Reduction: National Integrated Firearms Violence Reduction Strategy* (Jan. 18, 2001) https://www.justice.gov/archive/opd/Strategy.htm#Industry%20Self-Policing...............................................................................................9

*Everytown Files Complaint with FTC Urging Investigation of Daniel Defense, LLC*, EVERYTOWN LAW (July 24, 2022), *available at* https://everytownlaw.org/case/everytown-files-complaint-with-ftc-urging-investigation-of-daniel-defense-llc ..........................................................6

Garen J. Wintemute et al., *Risk factors among handgun retailers for frequent and disproportionate sales of guns used in violent and firearm related crimes*, 11 INJ. PREVENTION 357 (2005), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1730299...............................4

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

2

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

3

4

5

Glenn Thrush & Katie Benner, *6 Gun Shops, 11,000 'Crime Guns': A Rare Peek at the Pipeline*, NY TIMES (Apr. 28, 2022), https://www.nytimes.com/2022/04/28/us/politics/gun-shops-weapons-resell.html ..................................................................................2

6

7

8

9

The White House, *Fact Sheet: President Biden Announces New Actions to Reduce Gun Violence and Make Our Communities Safer* (Mar. 14, 2023), *available at* https://www.whitehouse.gov/briefing-room/statements-releases/2023/03/14/fact-sheet-president-biden-announces-new-actions-to-reduce-gun-violence-and-make-our-communities-safer ....................5

10

11

12

Jeff Wagner, *How is a gun retailer supposed to stop straw purchases?*, CBS MINN. (Oct. 17, 2022), https://www.cbsnews.com/minnesota/news/how-is-a-gun-retailer-supposed-to-stop-straw-purchases ..................................................................10

13

14

15

Letter from U.S. Senator Richard A. Blumenthal et al. to the Fed. Trade Comm'n Chair Linda Khan (Sept. 12, 2022), *available at* https://www.blumenthal.senate.gov/imo/media/doc/9122022ftcunfairmarketingbyfirearmsindustryletter.pdf ............................................5

16

17

18

*NSSF Welcomes Bipartisan U.S. House FFL Protection Act Bill*, NSSF (Apr. 26, 2023), *available at* https://www.nssf.org/articles/nssf-welcomes-bipartisan-u-s-house-ffl-protection-act-bill ................................................................8

19

20

21

ATF, *How Guns Flow from Legal to Illegal Commerce*, *available at* https://www.atf.gov/resource-center/infographics/how-guns-flow-legal-illegal-commerce ..........................................................................2

22

*Walmart Policies and Guidelines: Firearms and Ammunition Guidelines*, WALMART, https://corporate.walmart.com/policies .......................10

23

24

25

26

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - v
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

**CORPORATE DISCLOSURE STATEMENTS**

2          Brady Center to Prevent Gun Violence ("Brady") is a nonprofit organization.

3    It has no parent corporations. It has no stock, and therefore no publicly held company

4    owns 10% or more of its stock.

5          Everytown for Gun Safety Support Fund ("Everytown") is a nonprofit

6    organization. It has no parent corporations. It has no stock, and therefore no publicly

7    held company owns 10% or more of its stock.

8          Giffords Law Center to Prevent Gun Violence ("Giffords") is a nonprofit

9    organization. It has no parent corporations. It has no stock, and therefore no publicly

10   held company owns 10% or more of its stock.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - vi
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### INTERESTS OF AMICI CURIAE

Amici Everytown, Brady, and Giffords are national gun violence prevention organizations that have decades of experience researching the causes of and contributors to gun violence, including the role the gun industry can play in reducing such violence and diversion of firearms into the criminal market. Amici are well-positioned to assist the Court in understanding how irresponsible gun industry conduct may give rise to a public nuisance, and the varied tools available to the gun industry to reduce the magnitude of the problem. Amici also have extensive experience litigating cases involving the gun industry, including cases involving the Protection of Lawful Commerce in Arms Act and the Second Amendment.

### ARGUMENT

Plaintiff National Shooting Sports Foundation ("NSSF") has asserted a facial challenge to Substitute Senate Bill 5078, 68th Leg., Reg. Sess. (Wash. 2023) ("SSB 5078" or "the Statute"). SSB 5078 subjects gun industry actors to civil liability when their irresponsible, dangerous, and unlawful actions create a public nuisance as defined by the Statute. As Defendant's briefs demonstrate, NSSF's challenge is meritless and should be rejected.

Amici write to address three of NSSF's arguments, about which Amici have particular expertise. *First*, SSB 5078 is not designed "to make manufacturers and sellers of firearms pay for harms caused by criminals," as NSSF contends. NSSF Br. at 1 (ECF No. 17). Instead, the statute imposes liability on reckless gun industry actors for *their own dangerous actions*. That is logical, because irresponsible and unlawful conduct by gun industry actors directly facilitates gun violence. *Second*, NSSF is wrong that SSB 5078's reasonableness standard makes it impossible for gun industry actors to determine what type of conduct runs afoul of SSB 5078. *Id.* at 21-22, 25-26. There is a wealth of available information regarding reasonable

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - 1
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

practices and controls that gun industry actors can take to prevent and reduce the diversion of firearms to the criminal market and thereby mitigate the public health crisis of gun violence. *Third*, SSB 5078 does not violate the Second Amendment because that constitutional provision does not apply to or prohibit this type of reasonable regulation of firearms-related commerce.

## I.   By Imposing Liability on Bad Actors in the Gun Industry for Their Own Irresponsible Practices, SSB 5078 Addresses Their Pivotal Role in Facilitating Gun Violence in Washington.

SSB 5078 holds irresponsible gun industry actors accountable for unreasonable actions *they take* in connection with supplying guns to the criminal gun market and facilitating illegal use of guns. As the Washington legislature recognized, many firearm industry members "take reasonable precautions to protect others' lives and well-being." SSB 5078 § 1(3). SSB 5078 is directed at the other contingent—those that have "implemented irresponsible and dangerous sales, distribution, importing and marketing practices, including contributing to the development of an illegal secondary market" for firearms and related products. *Id.*

The connection between unreasonable behavior by some gun industry actors and the proliferation of gun violence, which SSB 5078 addresses, is well established. Webster Decl. ¶¶ 13-16, 18-24 (ECF No. 39); Gundlach Decl. ¶¶ 11, 15-18 (ECF No. 36).[1] Guns frequently end up in the hands of criminals as a result of gun

---

[1] *See* Daniel Semenza & Richard Stansfield, *Curbing the Illicit Market: Enhancing Firearm Regulations to Reduce Gun Violence,* ROCKEFELLER INSTIT. OF GOV'T, at 1-3 (May 2023), *available at* https://rockinst.org/issue-area/curbing-the-illicit-market-enhancing-firearm-regulations-to-reduce-gun-violence (*citing* ATF, *How Guns*

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - 2
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

companies' and dealers' distribution and sale of guns to straw purchasers (purchasers buying guns for someone else), prohibited purchasers (individuals precluded by law from having guns), and gun traffickers, and as a result of thefts from those entities. Webster Decl. ¶¶ 9-12; Gundlach Decl. ¶¶ 10-12. Indeed, nearly all guns used in a crime or suspected of having been used in a crime ("crime guns") are sourced originally from the legal market. Gundlach Decl. ¶ 13; Webster Decl. ¶ 10.

SSB 5078 tackles the problem of "irresponsible, dangerous, and unlawful business practices" that "contribute[] to the illegal use of firearms" by imposing liability on gun industry actors that fail to adopt three types of practices: (i) practices to prevent unlawful sales; (ii) practices to prevent firearm loss or theft; and (iii) practices to ensure compliance with existing laws. SSB 5078 §§ 1(1), 2(1)(f). Each type of business practice relates to actions gun industry actors themselves can (and sometimes do) take to reduce illicit gun possession and use.

Taking one example, SSB 5078 imposes liability on a gun industry actor (*e.g.*, a retail gun store) that fails to use reasonable procedures to prevent the sale of a firearm to a straw purchaser, which is defined as a person who wrongfully purchases

---

*Flow from Legal to Illegal Commerce* (last accessed June 7, 2023), *available at* https://www.atf.gov/resource-center/infographics/how-guns-flow-legal-illegal-commerce); *see also* Glenn Thrush & Katie Benner, *6 Gun Shops, 11,000 'Crime Guns': A Rare Peek at the Pipeline*, NY Times (Apr. 28, 2022), https://www.nytimes.com/2022/04/28/us/politics/gun-shops-weapons-resell.html.

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - 3
[2:23-cv-00113-MKD]

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

or obtains the product on behalf of a third party. *Id.* §§ 2(f)-(g), 4. Straw purchases are a common pathway for diversion of guns into the illicit market. Webster Decl. ¶ 11. Research has long shown that a substantial number of federally licensed gun dealers facilitate firearms diversion through straw purchasing. Gundlach Decl. ¶ 10-17.[2] By attaching civil liability for gun industry actors' failure to use reasonable business practices to prevent straw purchases, SSB 5078 incentivizes responsible and lawful behavior by those actors, separate and apart from the criminal legal consequences frequently imposed on straw purchasers themselves.

Notably, irresponsible and dangerous gun industry conduct regarding straw purchasers plagues Washington State. For instance, the United States Department of Justice ("DOJ") recently filed charges against an alleged straw purchaser who bought more than 100 firearms from at least nine federally licensed dealers in the greater Seattle area between June 2021 and March 2023, including one gun that was used in an armed robbery and assault. Complaint at 6, 8, *United States v. Cooper*, No. 2:23-mj-00174 (W.D. Wash. Apr. 17, 2023) (Dkt. 1). Employees from two of the dealers confirmed that the purchaser displayed suspicious behavior commonly

---

[2] *See also* Anthony A. Braga et al., *Underground Gun Markets and the Flow of Illegal Guns into the Bronx and Brooklyn: A Mixed Methods Analysis*, 98 J. URBAN HEALTH 596, 598 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8566688/; Garen J. Wintemute et al., *Risk factors among handgun retailers for frequent and disproportionate sales of guns used in violent and firearm related crimes*, 11 INJ. PREVENTION 357, 357 (2005), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1730299.

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - 4
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

associated with straw purchasing and that they assumed that the individual was "likely selling [guns] to other people"—and yet, both retailers sold firearms to him anyway. *Id.* at 7-8. Had SSB 5078 been in effect prior to these sales, retailers such as these would have been strongly incentivized to adopt reasonable controls against straw purchasing to prevent such illegal sales, and the state would have been able to institute a civil action to hold these retailers accountable for their conduct.

SSB 5078 also targets irresponsible and dangerous gun industry conduct involving online sales practices. In a case litigated in Texas, an online ammunition seller allegedly failed to require any proof that its customers were of legal age, resulting in the unlawful sale of handgun ammunition to a 17-year-old who used it to murder ten of his classmates and teachers. *See In re Luckygunner LLC*, No. 14-21-00194, 2021 WL 1904703 (Tex. Ct. App. May 12, 2021). Online sellers such as these target customers nationwide. Such unreasonable business practices and failures to implement obvious, simple, and low-cost precautions, if directed at residents of Washington, may now be actionable under SSB 5078.

SSB 5078 also addresses the well-recognized problem of irresponsible and dangerous marketing by gun industry actors. SSB 5078 § 2(11). Such marketing—and its role in encouraging gun violence—is a recognized problem.[3] NSSF itself

---

[3] *See, e.g.*, *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 510 (E.D.N.Y. 2003) (noting that "proposals for changes in the marketing and distribution of firearms would reduce the illegal market in firearms and the injuries to the NAACP, its members, and potential members"); Letter from U.S. Senator Richard A. Blumenthal et al. to the Fed. Trade Comm'n Chair Linda Khan (Sept. 12, 2022), *available at*

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - 5
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

suggests that depictions of firearms and violence in other media (*e.g.*, action films and video games) "may actually encourage gun violence," NSSF Br. at 23, without explaining how the use of similar tactics by industry companies is any different.[4]

---

https://www.blumenthal.senate.gov/imo/media/doc/9122022ftcunfairmarketingbyfirearmsindustryletter.pdf; The White House, *Fact Sheet: President Biden Announces New Actions to Reduce Gun Violence and Make Our Communities Safer* (Mar. 14, 2023), *available at* https://www.whitehouse.gov/briefing-room/statements-releases/2023/03/14/fact-sheet-president-biden-announces-new-actions-to-reduce-gun-violence-and-make-our-communities-safer (discussing executive order directing the Federal Trade Commission to analyze how gun manufacturers market firearms to minors and civilians).

[4] Gun industry marketing often references popular video games like Call of Duty and Grand Theft Auto, and suggests violent or militaristic uses of guns even when marketing to civilians. For example, firearm manufacturer Daniel Defense's social media include images from the perspective of a sniper with the caption "Rooftop ready, even at midnight" to invoke an offensive military combat fantasy that is illegal and inappropriate for civilians. @DanielDefense, INSTAGRAM (Mar. 2, 2022) (last accessed Mar. 24, 2023). This type of firearms marketing appeals to individuals with violent fantasies, like mass shooters. *See, e.g.*, *Everytown Files Complaint with FTC*

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - 6
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Given data showing that adolescent and young adult men are highly susceptible to advertisements depicting impulsive, thrill-seeking behavior, it makes perfect sense to require gun industry actors to market their products in a responsible and reasonable manner, especially where minors are concerned. *See* Cornelia Pechmann et al., *Impulsive and Self-Conscious: Adolescents' Vulnerability to Advertising and Promotion*, J. Pub. Policy & Marketing, 202, 203-07 (2005), *available at* https://journals.sagepub.com/doi/10.1509/jppm.2005.24.2.202. It is also fair and consistent with historical precedent to hold gun industry actors accountable for unreasonable marketing. Gundlach Decl. ¶¶ 94-103; Busse Decl. ¶¶ 21, 43-50, 53 (ECF No. 33).

\*    \*    \*

It is simply untrue, despite NSSF's claims, that SSB 5078 imposes liability on rule-following gun industry actors for "the behavior of third-party criminals outside [of the gun industry actor's] control." Reh Decl. ¶ 16 (ECF No. 19). To the contrary, the statute is directed at unreasonable, irresponsible, and unlawful conduct committed by gun industry actors themselves. Such conduct unquestionably "lead[s] to public harms," which SSB 5078 is designed to reduce. SSB 5078 § 1(3).

## II.    What Constitutes Lawful and Reasonable Conduct Under SSB 5078 Is Known and Knowable by Gun Industry Actors.

NSSF's claim that gun industry participants cannot figure out how to comply with SSB 5078 is similarly unfounded. NSSF and responsible actors within the gun

---

*Urging Investigation of Daniel Defense, LLC*, Everytown Law (July 24, 2022), *available    at*    https://everytownlaw.org/case/everytown-files-complaint-with-ftc-urging-investigation-of-daniel-defense-llc.

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - 7
[2:23-cv-00113-MKD]

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   industry are well aware of known reasonable measures they can take to reduce the

2   risk of firearms diversion and illegal use; as discussed below, some have already

3   implemented them. Far from imposing an incomprehensible standard, SSB 5078

4   aligns with decades of evidence and experience that illuminate the contours of

5   responsible gun industry participation.

6          Contrary to NSSF's claim, SSB 5078 does *not* require gun industry members

7   to "adopt *any and all* procedures." NSSF Br. at 26 (emphasis added). It requires the

8   use of *reasonable* controls and precautions. SSB 5078 § 2(4)-(5). "Reasonable

9   controls" is defined to mean "reasonable procedures, safeguards, and business

10  practices" designed to prevent prohibited sales, minimize loss or theft of firearms,

11  and promote compliance with existing State and federal law. *Id.* § 2(1)(f).

12         NSSF complains that gun industry members have no way of knowing what

13  "controls" will be deemed reasonable under this framework. *See* NSSF Br. at 25-26.

14  But NSSF's own actions, governmental agency guidance, industry participant

15  findings, and suggested manufacturer and distributor protocols, taken together,

16  reveal that NSSF is simply conjuring up imaginary confusion for litigation purposes.

17         First, NSSF's efforts over the last two decades show that its befuddlement is

18  feigned. NSSF has boasted about its efforts to promote responsible gun industry

19  behavior in numerous areas, including the three identified in SSB 5078 (*i.e.*, business

20  practices designed to prevent unlawful sales, firearm loss and theft, and compliance

21  with applicable laws). Gundlach Decl. ¶¶ 47-52. NSSF even disseminates a training

22  video to its members called "Don't Lie for the Other Guy," which "assist[s] firearms

23  retailers in detecting and preventing straw purchases" by identifying a series of

24  questions to flag suspicious purchasers. *Id.* ¶ 48. And NSSF promotes a joint

25  initiative with the federal government called "Operation Secure Store" to help gun

26  stores "make well-informed security related decisions to deter and prevent thefts."

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - 8
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Id.* ¶¶ 51-52. NSSF also recently promoted several "firearm industry safety initiatives," including efforts to "address robbery and burglary of firearms" via "conduct[ing] retail store security seminars, assist[ing Federal Firearms License] retailers with store security audits of their premises and endors[ing] and promot[ing] the use of security products like smash resistant display cases." NSSF, *NSSF Welcomes Bipartisan U.S. House FFL Protection Act Bill* (Apr. 26, 2023), *available at* https://www.nssf.org/articles/nssf-welcomes-bipartisan-u-s-house-ffl-protection-act-bill. Such initiatives represent just a few examples of the "reasonable controls" available to industry members—with which NSFF is unquestionably familiar.

Beyond NSSF's own communications to its members regarding reasonable controls, DOJ also has identified reasonable behavior that is expected from gun industry actors. In 2001, DOJ disseminated specific, reasonable safeguards that industry actors should pursue to prevent the diversion of firearms, including "identify[ing] and refus[ing] to supply dealers and distributors that have a pattern of selling guns to criminals and straw purchasers" and developing a "training program for dealers and distributors covering compliance with firearms laws, identifying straw purchase scenarios and securing inventory." DOJ, *Gun Violence Reduction: National Integrated Firearms Violence Reduction Strategy*, 29-30 (Jan. 18, 2001) https://www.justice.gov/archive/opd/Strategy.htm#Industry%20Self-Policing; *see also NAACP*, 271 F. Supp. 2d at 523 (evidence introduced at trial established that firearms manufacturers and distributors "could—voluntarily and through easily implemented changes in marketing and more discriminating control of the sales practices of those to whom they sell their guns—substantially reduce the harm

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - 9
[2:23-cv-00113-MKD]

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

occasioned by the diversion of guns to the illegal market and by the criminal possession and use of those guns").[5]

Next, researchers and industry participants themselves have, through decades of study and experience, identified a range of clear, manageable procedures that reduce the risk of firearms diversion. For instance, the owner of a licensed dealer in Minnesota recently spoke about his store's capacity to reduce and prevent straw purchases, including by recognizing red flags of straw purchases such as (i) buyer nervousness; (ii) a buyer's lack of knowledge about her guns of choice or use of reference photographs to identify them; and (iii) a buyer texting during a

---

[5] The court found, for example, that diversion into the illegal market would be "substantially decreased" if "manufacturers and distributors insisted that retail dealers who sell their guns be responsible—*e.g.*, that they not sell at gun shows, but sell from the equivalent of a store front with a supply of stocked guns; that they not sell under a variety of names; that they protect against theft; that they train and supervise employees to prevent straw sales (which are often notoriously obvious to the seller); and that they take other appropriate and available protective action." 271 F. Supp. 2d at 450. The court ultimately dismissed the case on other grounds, concluding that the plaintiff lacked standing. *Id.* at 499.

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - 10
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

transaction.[6] And, Walmart, one of the largest gun dealers in the country, has published guidelines for responsible firearms sales, which include practices like videotaping the point of sale, performing inventory audits, and conducting regular training for firearms sales associates.[7]

Finally, known processes available to manufacturers and distributors—not just dealers—can reduce diversion. These practices include: (i) monitoring downstream actors for risky sales patterns; (ii) refusing to supply bad actor dealers that have a record of frequently and disproportionately selling crime guns; (iii) requiring downstream dealers to conduct anti-straw-purchasing trainings; and (iv) monitoring downstream dealers through visitation and other regular contact. Many of these known practices are easy to implement by leveraging existing contracts and communication processes among manufacturers, distributors, and dealers. Gundlach Decl. ¶¶ 53-60.

Looking to established practices, manufacturers and distributors may, for example, monitor downstream actors for risky sales patterns based on the "trace" requests that they receive from the federal government. *Id.* ¶ 59 (noting that Beretta has used this approach). When a law enforcement agency recovers a gun in connection with crime, the agency can request that the federal government "trace"

---

[6] Jeff Wagner, *How is a gun retailer supposed to stop straw purchases?*, CBS MINN. (Oct. 17, 2022), https://www.cbsnews.com/minnesota/news/how-is-a-gun-retailer-supposed-to-stop-straw-purchases.

[7] *Walmart Policies and Guidelines: Firearms and Ammunition Guidelines*, WALMART, https://corporate.walmart.com/policies (last accessed June 6, 2023).

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - 11
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    the firearm's path through the chain of distribution, from manufacturer through the

2    first retail sale. ATF, *Fact Sheet – National Tracing Center* (Apr. 2023),

3    https://www.atf.gov/resource-center/fact-sheet/fact-sheet-national-tracing-center.

4    By monitoring these requests, gun manufacturers can identify disproportionate

5    diversion patterns, require downstream distributor and retailer reporting of trace

6    requests, and take appropriate corrective action.

7         These established practices are examples of industry participants' reasonable

8    exercise of common sense. Bolstering this position, Smith & Wesson—one of the

9    nation's largest gun manufacturers—once agreed to implement a detailed protocol

10   that included these and other distribution controls described above. *Agreement*

11   *Between Smith & Wesson and the Departments of the Treasury and Housing and*

12   *Urban Development, Local Governments and States*, at Part II (Mar. 7, 2000),

13   *available at* https://www.nraila.org/articles/20000317/smith-wesson-settlement-

14   agreement. Among other procedures, Smith & Wesson agreed to require that sellers

15   of their products: (i) track dealers that sold disproportionate numbers of guns

16   ultimately recovered by law enforcement; (ii) limit multiple handgun purchases by

17   the same individual within a short period; (iii) maintain an electronic firearms

18   inventory; (iv) conduct monthly inventory audits; and (v) implement anti-theft

19   security plans. *Id*. Though not ultimately enforced, the settlement shows the capacity

20   of industry members to identify and adopt reasonable practices to reduce firearms

21   diversion and other risk factors for gun violence.

22        NSSF's claims that its members are confounded by how to comply with SSB

23   5078's marketing requirements fare no better. Reasonable marketing practices—

24   including age-gating to prevent minors from viewing product ads for items they

25   cannot lawfully purchase, incorporating risk and safety disclosures, and limiting the

26   use of marketing that appeals to juveniles or criminals—have been adopted in

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - 12
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    analogous contexts, such as the sale of tobacco, e-cigarettes, gambling, and alcohol.

2    And, in any event, the groundwork for reasonable limitations in firearms marketing

3    has already been laid. For example, in the 2001 Smith & Wesson settlement

4    agreement discussed above, the company agreed to restrictions on marketing guns

5    in ways that would make them "particularly appealing to juveniles or criminals, such

6    as advertising a firearm as 'fingerprint resistant.'" The manufacturer also reaffirmed

7    its commitment to avoiding advertisements near schools. *Id.* at Part II.D.

8        Contrary to NSSF's claims, the gun industry knows responsible marketing

9    practices. Many gun industry actors, however, simply choose not to implement them.

10   SSB 5078 is designed to change the calculus for those irresponsible actors.

11        In short, and contrary to NSSF's assertions in this lawsuit, industry members

12   are well-positioned to identify and implement reasonable conduct to avoid

13   endangering the public.

14   **III.**   **SSB 5078 Does Not Violate the Second Amendment.**

15        NSSF has not plausibly alleged a Second Amendment claim, let alone

16   established a likelihood of success on the merits. Under the text-and-history

17   framework established by *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct.

18   2111 (2022), the burden to show that "the Second Amendment's plain text covers

19   an individual's conduct," *id.* at 2117, is on the plaintiff challenging a law. Only *after*

20   the textual inquiry is satisfied does a presumption of constitutional protection arise.

21   *See id.* at 2126, 2141 n.11; *Or. Firearms Fed'n v. Brown*, No. 2:22-cv-01815, 2022

22   WL 17454829, at *9-12 (D. Or. Dec. 6, 2022) (reading *Bruen* to place the burden on

23   the plaintiff at the initial, textual step of the inquiry), *appeal dismissed*, No. 22-

24   36011, 2022 WL 18956023 (9th Cir. Dec. 12, 2022); *Nat'l Ass'n for Gun Rights v.*

25   *City of San Jose*, 618 F. Supp. 3d 901, 914 (N.D. Cal. 2022) (same). Placing the

26   initial burden on the plaintiff accords with the Court's approach to other

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - 13
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  constitutional rights. *See, e.g.*, *Kennedy v. Bremerton School District*, 142 S. Ct.

2  2407, 2421 (2022) (discussing a plaintiff's burden in First Amendment cases).

3      NSSF has not come close to meeting its textual burden here. The Second

4  Amendment guarantees the right of "the people" to "keep and bear" arms, not the

5  right of the firearms industry to manufacture or sell arms. *Teixeira v. Cnty. of*

6  *Alameda*, 873 F.3d 670, 673 (9th Cir. 2017) (en banc). Accordingly, NSSF's attempt

7  to assert a constitutional right to sell firearms necessarily fails. *See also United States*

8  *v. Tilotta*, No. 3:19-cr-04768, 2022 WL 3924282, at *5 (S.D. Cal. Aug. 30, 2022)

9  (explaining that, "textually, the ordinary meaning of 'keep and bear' does not include

10  'sell or transfer'"). And the same logic applies to any asserted right to manufacture

11  firearms. *See Teixeira*, 873 F.3d at 690 n.24; *see also Def. Distributed v. Bonta*, No.

12  2:22-cv-6200, 2022 WL 15524977, at *4 (C.D. Cal. Oct. 21, 2022) (Second

13  Amendment's plain text "quite-clearly" does not include any "implicit[]" right to

14  "manufacture firearms"), *adopted by* 2022 WL 15524983 (C.D. Cal. Oct. 24, 2022).

15      Moreover, NSSF does not explain how it or the firearms industry members it

16  has identified—all of which are corporate entities—are part of "the people"

17  protected by the Second Amendment. They are not, as multiple courts have held.

18  *See, e.g.*, *Gazzola v. Hochul*, No. 1:22-cv-01134, 2022 WL 17485810, at *14

19  (N.D.N.Y. Dec. 7, 2022), *appeal docketed*, No. 22-3068 (2d Cir. Dec. 5, 2022); *Leo*

20  *Combat, LLC v. U.S. Dep't of State*, No. 15-cv-2323-NYW, 2016 WL 6436653, at

21  *8-10 (D. Colo. Aug. 29, 2016).

22      Nor are NSSF's claims *connected* to any right of "the people" to keep and

23  bear arms. *Cf. Teixeira*, 873 F.3d at 687. NSSF suggests, without elaboration, that

24  Washington's law implicates the right to "acquire arms." Compl. at 32 ¶ 92; PI Mot.

25  at 34. But, as Defendant explains, NSSF fails to allege or offer any evidence of that.

26

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - 14
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

NSSF, therefore, cannot state a Second Amendment claim, let alone show a likelihood of success on the merits as required for a preliminary injunction.

Concluding that NSSF has not met its textual burden is consistent with the Supreme Court's many assurances that "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful regulatory measures." *District of Columbia v. Heller*, 554 U.S. 570, 626-627 & n.26 (2008); *see McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring). Washington's law is one such presumptively lawful measure.

## CONCLUSION

The Court should grant Defendant's motion to dismiss and deny Plaintiff's motion for a preliminary injunction.

DATED this 7ᵗʰ day of June 2023.

Respectfully Submitted,

SUMMIT LAW GROUP, PLLC
Attorneys for *Amici Curiae Everytown for Gun Safety, Giffords Law Center to Prevent Gun Violence, And Brady Center to Prevent Gun Violence*

By *s/ Jessica L. Goldman*
Jessica L. Goldman, WSBA #21856
jessicag@summitlaw.com

BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS
AMICI CURIAE - 15
[2:23-cv-00113-MKD]

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001