1  Steven W. Fogg, WSBA No. 23528
2  CORR CRONIN LLP
   1015 Second Avenue, Floor 10
3  Seattle, WA 98104-1001
   Ph: (206) 625-8600
4

5

6

7

8                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF WASHINGTON
9

   NATIONAL SHOOTING SPORTS          No. 2:23-cv-00113-MKD
10 FOUNDATION,
                                      PLAINTIFF'S REPLY IN
11          Plaintiff,                SUPPORT OF MOTION FOR
                                      PRELIMINARY INJUNCTION
12 v.

13 ROBERT W. FERGUSON,
   ATTORNEY GENERAL OF THE
14 STATE OF WASHINGTON,

15          Defendant.

16

17

18

19

20

21

22

23

24

25

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Senate Bill 5078 is preempted and unconstitutional. In trying to defend it, Washington mischaracterizes NSSF's claims, fails to respond to several of NSSF's arguments, and ignores contrary precedent. The Court should enjoin SB5078.

## ARGUMENT

## I.    NSSF Is Likely To Succeed On The Merits Of Its Claims.

At the outset, Washington repeatedly characterizes NSSF's claims against SB 5078 as blunderbuss "facial" challenges, *see, e.g.*, ECF No. 32 ("Resp.Br.") at 4, 6, 9, and charges NSSF with needing to "show no set of circumstances exists under which the law would be valid," Resp.Br. at 14. Washington either misunderstands NSSF's claims or misunderstands what it means for a law to be invalid "on its face"—or perhaps both.[1]

While this is indeed a pre-enforcement challenge, *not every pre-enforcement suit is "facial"* in the sense that it claims that all applications of the challenged law are invalid. Plaintiffs routinely bring (and win) pre-enforcement challenges to a law as it would apply to their own anticipated conduct. *See, e.g.*, S*usan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014); *FEC v. Wis. Right to Life*, 551 U.S. 449 (2007). This is black-letter law. "That the statute has not been applied to [a plaintiff] does not preclude [the plaintiff] from bringing a pre-enforcement, as-applied challenge." *Hotop v. City of San Jose*, 2018 WL 4850405, at *4 (N.D. Cal. Oct. 4, 2018)

---

[1] Washington also argues that NSSF lacks standing and a cause of action, but it does so in its motion to dismiss, so NSSF will respond to those arguments in its opposition.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 1

1
2
3
4
5
6
7
8

(alterations in original; citation omitted), *aff'd*, 982 F.3d 710 (9th Cir. 2020). Like the plaintiffs in those (and myriad other cases), NSSF alleges here that a statute cannot lawfully be applied to hold its members liable for specific conduct the statute proscribes. "If [NSSF] can show that [SB 5078] is unconstitutional [and/or preempted] as to the [members] on whose behalf they sue, then [NSSF] ha[s] met [its] burden for an as-applied challenge," even though "the statute has not yet been applied." *Isaacson v. Horne*, 716 F.3d 1213, 1230 n.15 (9th Cir. 2013).

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

NSSF has not asked this Court to invalidate SB 5078 in every possible application it may have to, e.g., unlicensed manufacturers of so-called ghost guns. NSSF has asked this Court to invalidate SB 5078 *only* to the extent it: is preempted by the PLCAA; directly regulates out-of-state conduct in excess of a state's power; discriminates against and unduly burdens interstate commerce; and conflicts with the First, Second, and Fourteenth Amendments. To be sure, those claims are "facial" in the sense that the constitutional defects are apparent in the text of SB 5078—i.e., "on its face." But that does not mean that they all necessarily require the Court to invalidate the statute in its entirety. If this Court accepts only arguments that support enjoining particular applications of SB 5078, then it may tailor its injunction to address only those applications. That is what it means to bring a pre-enforcement as-applied challenge to a statute. *See Hotop*, 2018 WL 4850405, at *4 ("the distinction [between facial and as-applied challenges] matters primarily to the remedy appropriate if a constitutional violation is found" (alteration in original)).

And that is no less true of NSSF's preemption claim. NSSF maintains that

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 2

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

SB 5078 is preempted to the extent it authorizes lawsuits against parties protected by the PLCAA that are not predicated on a knowing violation of some law other than SB 5078 that was a proximate cause of the injuries for which redress is sought. If there are applications of SB 5078 that fall outside the scope of that challenge, like actions against entities that are not federally licensed manufacturers or dealers, or actions predicated on some other PLCAA exception, the state is certainly free to ask this Court to craft any relief it may grant to exclude those applications. But the state cannot preclude NSSF from obtaining any relief at all by pointing to potentially valid applications of SB 5078 that are outside the scope of NSSF's preemption challenge.

Finally, the state argues NSSF cannot bring a preemption challenge to SB5078 *at all* because the "PLCAA preempts only specific 'civil actions,' not statutes." Resp.Br. at 6. Once again, Washington misunderstands the relief NSSF seeks. NSSF has not asked this Court to "invalidate" SB 5078. It has asked this Court to enjoin the state from enforcing SB 5078 by bringing civil actions that the PLCAA commands "may not be brought." 15 U.S.C. §7902(a). In other words, NSSF is seeking an injunction prohibiting the state from violating the PLCAA. There is nothing remotely unusual about a preemption claim that seeks to enjoin state officials from enforcing state law in a manner that would violate federal law. "For more than a century, federal courts have entertained suits seeking to enjoin state officials from implementing state legislation allegedly preempted by federal law." *Indep. Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1061–62 (9th Cir. 2008).

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 3

**A.      SB 5078 Authorizes State Action the PLCAA Preempts.**

Under the PLCAA, civil actions against firearm industry members to redress harm resulting from a third party's misuse of a firearm "may not be brought." 15 U.S.C. §§7902(a), 7903(5)(A). Washington does not deny that SB 5078 authorizes actions that fit that bill. Instead, it argues that SB 5078 suits fit within the PLCAA's so-called predicate exception, §7903(5)(A)(iii). Resp.Br. at 6–11. That argument is foreclosed by circuit precedent. To be sure, the PLCAA must be interpreted according to its "plain language," *id.* at 7, but it is bedrock law that interpretation of statutory text must account for both the "'specific context in which … language is used' and 'the broader context of the statute as a whole.'" *Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014). Indeed, the Ninth Circuit already *applied precisely those principles* when interpreting *the very same language* in the PLCAA at issue here. *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009).[2] And doing so led the court to squarely reject the proposition on which Washington now relies, i.e., that a state statute that merely codifies common-law causes of action qualifies as a predicate statute. As the Ninth Circuit held, such statutes invite the same kind of "'judicial evolution' [that] was precisely the target of the PLCAA." *Id.* at 1136.

Washington tries to waive away *Ileto* by claiming that it interpreted the

---

[2] Notably, while the state derides the notion that the predicate exception's two illustrative examples shed any light on the meaning of "applicable to," Resp.Br. at 7–8, the *Ileto* court begged to differ, *see Ileto*, 565 F.3d at 1134.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 4

predicate exception to apply only to statutes "applicable *specifically*" to the sale and marketing of firearms. Resp.Br. at 7 (emphasis added). In reality, *Ileto* went out of its way to *reject* that argument, concluding that the problem was *not* that the state statute at issue was insufficiently "applicable" to the firearms industry, but rather that "an examination of the text and purpose of the PLCAA shows that Congress intended to preempt *general tort theories of liability*," regardless of whether they are advanced through common-law or statutory causes of action. 565 F.3d at 1136 (emphasis added); *see also id.* at 1138 ("conclud[ing] that Congress intended to" and did "preempt *general tort law claims*" even when a state "has codified th[em] in its civil code" (emphasis added)). Washington does not (and cannot) explain how that binding interpretation of the PLCAA could cease to govern just because the same common-law theories are codified in a statute that is specific to the firearms industry.

Nor does Washington offer any rational explanation for the nonsensical idea that the PLCAA—a law specifically designed to protect firearm industry members (and them alone) from suits "based on theories without foundation in hundreds of years of the common law," 15 U.S.C. §7901(a)(7)—would somehow be *more* receptive to state laws that subject *only* those industry members to the same suits that Congress declared an "an abuse of the legal system," *id.* §7901(a)(6). Or, for that matter, grapple with the problem that its interpretation "would allow the predicate exception to swallow the statute." *City of N.Y. v. Beretta U.S.A. Corp.*, 524 F.3d 384, 403 (2d Cir. 2008); *see also Nat'l Shooting Sports Found. v. Platkin*, 2023 WL 1380388, at *7 (D.N.J. Jan. 31, 2023). Instead, the state just blithely insists that

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 5

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1  "[n]o rule of construction allows" this Court to avoid such absurd results. Resp.Br.

2  at 9. Apparently Washington is not familiar with the "elementary rule of construction

3  that '[an] act cannot be held to destroy itself.'" *Citizens Bank of Maryland v. Strumpf*,

4  516 U.S. 16, 20 (1995) (quoting *Tex. & Pac. R. Co. v. Abilene Cotton Oil Co.*, 204

5  U.S. 426, 446 (1907)); *see also, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S.

6  333, 343 (2011) (applying that principle in a preemption case).

7

8      As a last-ditch effort to save SB 5078, the state relies on (its characterization

9  of) the "PLCAA's purpose and history." Resp.Br. at 11–14. But the Ninth Circuit

10 has already provided the definitive account. Members of Congress were

11 "unanimous[]" in their "understanding" that cases like *Ileto*—which alleged that

12 "manufacturers … and sellers of [lawful] firearms" were liable under a California

13 nuisance statute for "foreseeably and proximately causing injury" wrought by

14 criminals who misused firearms simply by virtue of having made, sold, and marketed

15 their products in large numbers—were "exactly" the sort of lawsuits that the PLCAA

16 was intended to (and did) "eliminate." *Ileto*, 565 F.3d at 1130, 1137. As for the

17 PLCAA's purpose, the Ninth Circuit was equally explicit: "The purpose of the

18 PLCAA" (along with its text and history) compelled the "conclu[sion] that Congress

19 intended to preempt general tort law …, even though [a state has codified [it] in its

20 civil code." *Id.* at 1138.

21

22      Washington's arguments about the PLCAA's "knowingly" and "proximate

23 cause" requirements fare no better. It begins by observing that "only an 'action' must

24 meet the knowledge or proximate cause requirements, not the underlying statute

25

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 6

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

itself." Resp.Br. at 9. True—but irrelevant, as NSSF has asked this Court to enjoin the state from bringing specific *actions* under SB 5078, not to wipe SB 5078 off the books. The question, then, is whether the *actions* that SB 5078 allows satisfy the PLCAA's "knowingly" and "proximate cause" requirements. They do not. To be sure, SB 5078 requires knowing *conduct*, but it does not require a knowing *violation* of any federal or state law—and it is the latter that the predicate exception demands. *See* 15 U.S.C. §7903(5)(A)(iii); *Platkin*, 2023 WL 1380388, at *7.

Washington's efforts to reconcile its imposition of liability "notwithstanding any intervening actions, including but not limited to criminal actions by third parties" §2(9), with the predicate exception's proximate-cause requirement, is equally futile. The whole point of the PLCAA is to immunize industry members from harms caused by "the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." 15 U.S.C. §7901(b)(1). That objective would be wholly defeated if states could simply redefine proximate cause to exclude consideration of whether harms were caused by the criminal or unlawful acts of third parties. When Congress includes common-law terms in a statute, they presumably carry their common-law meaning, *Jam v. Int'l Fin. Corp.*, 139 S.Ct. 759, 769–70 (2019), not whatever meaning a state decides to give them decades after the fact. Indeed, there would be no reason for Congress to include a proximate-cause requirement in the predicate exception if, as Washington insists, it simply assumed "that courts would apply the proximate cause standards applicable to state and federal predicate statutes." Resp.Br. at 10. Accordingly, at a

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 7

minimum, this Court should enjoin the state from bringing actions under SB 5078 that do not satisfy *the PLCAA*'s "knowingly" and "proximate cause" requirements.[3]

## B. SB 5078 Exceeds the State's Authority to Regulate Extraterritorially.

Washington does not deny that SB 5078 empowers it to directly control conduct wholly outside of its borders. Instead, it claims that the Supreme Court's recent decision in *National Pork Producers Council v. Ross*, 143 S.Ct. 1142 (2023), eliminated *all* territorial limits on state power absent "purposeful discrimination" against interstate commerce. Resp.Br. at 16. Washington grossly overreads *Ross*. To be sure, *Ross* clarified that there is no per se bar on state laws that regulate conduct *within* a state in ways that have an "extraterritorial *effect*" in other states. 2023 WL 3356528, at *9 (emphasis added). But the Court went out of its way to emphasize that it was not dealing with a law that "*directly* regulated out-of-state transactions," *id.* at *10 n.1, which is exactly what SB 5078 does. Unlike the law in *Ross*, which regulated only sales in California, SB 5078 reaches outside Washington to directly regulate products made or sold out of state and transactions conducted out of state,

---

[3] Washington asks the Court "to sever the definition" of proximate cause in SB 5078. Resp.Br. at 10–11. But the whole point of SB 5078 is to impose liability on industry members for harms caused by third parties who use their products. No amount of redlining can change that. And for that reason, the notion that the legislature would have passed a PLCAA-compliant version of SB 5078 cannot be squared with the fact that it chose instead to enact a law fundamentally contrary to the PLCAA's aims.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 8

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

even if the manufacturer or seller engages in *no* activity in Washington. Nothing in *Ross* disturbs the long-settled principle that a state cannot "prosecute the citizen of another State for acts committed outside [its] jurisdiction." *Id.* at *10.

### C.    SB 5078 Violates the First Amendment and Is Void for Vagueness.

1.  SB 5078 imposes speaker-, content-, and viewpoint-based restrictions on speech. Its marketing restrictions apply only to firearm industry members (speaker), only to marketing about firearms products (content), and only to materials promoting firearms (viewpoint). Speech that "imposes a burden based on the content of speech and the identity of the speaker" demands "heightened scrutiny," and "[c]ommercial speech is no exception." *Sorrell v. IMS Health Inc*., 564 U.S. 552, 566–67 (2011).

Washington does not even try to argue that SB 5078 could survive strict scrutiny. It instead begins yet again with its "facial challenge" mantra, insisting that NSSF cannot invalidate SB 5078's marketing provisions without demonstrating that they have no valid applications. Once again, the state confuses the remedial question with the merits question. NSSF is *not* asserting an "overbreadth" challenge—i.e., a claim that while SB 5078 is constitutional as applied to the speech of NSSF and its members, it should nevertheless be invalidated in toto because it is unconstitutional as to "the speech of others not before the court." *Demarest v. City of Leavenworth*, 876 F.Supp.2d 1186, 1202 (E.D. Wash. 2012). NSSF is arguing that SB 5078 is unconstitutional *as to NSSF and its members*, because it subjects *them* to liability for truthful, non-misleading speech about lawful (indeed, constitutionally protected) products. Whether the statute is valid as applied to *unlawful* speech thus has nothing

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 9

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

to do with NSSF's claim or whether SB 5078 is valid as applied to the *lawful* speech in which NSSF and its members wish to continue to engage. To the extent SB 5078 may have other valid applications, the Court can tailor its injunction to exclude them.

Washington suggests that "arguably all" of SB 5078's applications concern only unlawful speech. Resp.Br. at 18. That argument is foreclosed by the plain text of the statute, which imposes liability for marketing that is deemed to have contributed to a public nuisance, or to lack "reasonable controls," *regardless of whether it was false, deceptive, misleading, or otherwise unlawful*. §2(3). And while Washington claims that SB 5078 merely prohibits "illegal" marketing targeting children and prohibited persons, Resp.Br. at 18, it actually prohibits *all* marketing targeted at minors, including marketing directed toward the many situations in which minors may lawfully use firearms, *see* ECF No. 17 at 23–24. Washington cannot save SB 5078 by promising that it will not abuse the broad power it bestows. Indeed, if the state really does not intend to deploy the statute vis-à-vis truthful, non-misleading marketing, then it should have no problem with this Court enjoining it from doing so.

Washington is thus left arguing that SB 5078 satisfies the test set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). But because SB 5078 is content-, speaker-, and viewpoint-based, it must satisfy something more stringent. In any event, SB 5078 fails even under *Central Hudson*. While the state certainly has a "substantial interest in mitigating gun violence," Resp.Br. at 19, that interest cannot override the First

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Amendment's protections for lawful marketing of lawful products.

Moreover, even under *Central Hudson*, "[c]ommercial speech that is not false, deceptive, or misleading" can be restricted "only if the State shows that the restriction directly and materially advances" its interest "in a manner no more extensive than necessary to serve that interest." *Ibanez v. Fla. Dep't of Bus. & Pro. Regul., Bd. of Acct.*, 512 U.S. 136, 142 (1994). Washington faults NSSF for focusing on SB 5078's underinclusiveness, Resp.Br. at 20, but a "consideration in the direct advancement inquiry is 'underinclusivity.'" *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 904 (9th Cir. 2009). And Washington does not dispute that SB 5078 is wildly underinclusive given all the speech it leaves on the table that may actually *encourage* gun violence. *See* Resp.Br. at 20; ECF No. 17 at 23. Nor can Washington deny the law's overinclusiveness. To the contrary, it all but concedes the problem by trying to rewrite SB 5078 to cover only unlawful marketing. The state itself thus seems to recognize that its "interest could be served as well by a more limited restriction on commercial speech," which is proof positive that its "excessive restrictions cannot survive" *any* heightened scrutiny. *Cent. Hudson*, 447 U.S. at 564.

2.    SB 5078 is also hopelessly vague. As to the marketing provisions, Washington insists that the statute will not chill *too* much lawful speech. Resp.Br. at 27. But as NSSF has already demonstrated, under SB 5078's vague standards *any* ad for a lawful product may be grounds for liability, forcing regulated parties to refrain from exercising their First Amendment rights. *See* ECF No. 17 at 24. One

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 11

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

need only look to recent lawsuits filed under a similar New York law to see that, as those suits fault industry members for such sins as marketing firearms based on traits as common as their "high capacity" and "ease of concealment." *City of Buffalo v. Smith & Wesson Brands, Inc.*, No. 6:23-cv-00066 (W.D.N.Y. Jan. 23, 2023), Dkt.1-1 ¶¶1, 32.

SB 5078 is also unconstitutionally vague as to all other conduct it polices. The state does not deny that the "stringent" test for when "constitutionally protected rights" are implicated governs here. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982). It just offers examples of conduct it considers to be "plainly cover[ed]" by SB 5078's "reasonable controls" and "reasonable precautions" provisions. Resp.Br. at 25–26. But that is nowhere close to sufficient to justify the layers of uncertainty baked into SB 5078, and it does nothing to mitigate the risk of "arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).

### D.    SB 5078 Violates the Second Amendment

Washington does not dispute what the Ninth Circuit has already recognized: "[T]he core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017). Nor does the state deny the long-settled Supreme Court precedent that a state may not eviscerate a constitutional right by attacking the means by which it is exercised. *See Luis v. United States*, 578 U.S. 5, 26–27 (2016) (Thomas, J., concurring). The state instead claims *Teixeira* precludes NSSF from bringing this suit because there is purportedly no right to make or sell

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

arms. In reality, *Teixeira* squarely held that "a gun store … has derivative standing to assert the subsidiary right to acquire arms on behalf of his potential customers." 873 F.3d at 678. And while the state protests that NSSF brought this suit on behalf of its members, not individuals, Resp.Br. at 23, that is a distinction without a difference: NSSF and its members are just as free to invoke the rights of the customers they serve as Mr. Teixeira was to invoke the rights of the customers he sought to serve.

The state is thus left arguing that SB 5078 will not "deprive individuals of the right to bear arms." *Id.* at 23. But that is no longer the right question. Courts must now begin by simply asking whether the "conduct" in which an individual seeks to engage falls within the "plain text" of the Second Amendment. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111, 2117 (2022). If it does, then it is "presumptively protected," and the state must affirmatively prove that its restriction on that conduct "is consistent with this Nation's historical tradition." *Id.* at 2126. Washington does not deny that acquiring firearms falls within the plain text of the Second Amendment, and it does not even try to meet its historical burden beyond a cursory claim that "nuisance laws have applied to firearms for centuries." Resp.Br. at 24. But however nuisance law may have applied to people who, e.g., failed to properly store gunpowder, they were *never* applied to impose third-party liability on those who simply lawfully made and sold them. *See City of Phila. v. Beretta U.S.A. Corp.,* 277 F.3d 415, 421 (3d Cir. 2002) (collecting cases).

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 13

## II.    The Remaining Factors Favor An Injunction.

The significant chilling effect SB 5078 has on constitutionally protected speech, the loss of immunity from suit, and the irrecoverable economic injury all suffice to demonstrate that NSSF and its members will suffer irreparable injury without injunctive relief. The state's arguments to the contrary are inconsistent with binding precedent and antithetical to fundamental constitutional commitments. NSSF's members remain under constant threat of suits that would deprive them and others of constitutional rights. That "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67-68 (2020) (per curiam). And while the state protests that NSSF's members have not attested that they have substantially altered their marketing or sales practices yet, Resp.Br. at 28, it ignores that NSSF brought this pre-enforcement suit to try to *avoid* those irreparable injuries, which makes the state's insistence that members must first suffer them nonsensical.

The threat of lawsuits poses a double risk of irreparable harm, moreover, given the immunity the PLCAA confers. NSSF does not rely on the "[m]ere risk of civil liability." *Id.* at 2. Even if an NSSF member *won* a suit brought under SB 5078, it *still* would have suffered irreparable injury simply by virtue of having been forced to defend against it. That is because the PLCAA does not just create an affirmative defense to liability; as its plain text makes clear—and as the Ninth Circuit has explicitly recognized—it grants industry members *substantive immunity* from suit entirely. *Ileto*, 565 F.3d at 1142 ("[T]he PLCAA … creates a substantive rule of law

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 14

granting immunity to certain parties against certain types of claims."); *see In re Academy*, 625 S.W.3d 19, 32–36 (Tex. 2021) (collecting cases). NSSF's members are immune *as a matter of federal law* from the sort of lawsuit SB 5078 invites, which is why the ability to assert affirmative defenses in a future suit brought under SB 5078 does not defeat irreparable injury for purposes of this case—especially when those suits would be brought by state actors protected by sovereign immunity.

Finally, the state insists that the problem is not that acute because New York passed a similar law two years ago that it says has posed little threat, and it suggests that only "irresponsible" actors have any reason to worry. Resp.Br. at 30. Apparently the state neglected to read the complaints Buffalo and Rochester filed under that law, which seek to subject most of the nation's largest manufacturers to liability for all of the gun violence in those cities on the theory that virtually *all* gun manufacturing is "irresponsible." *See City of Buffalo v. Smith & Wesson Brands, Inc.*, 2023 WL 3901741 (W.D.N.Y. June 8, 2023). The state thus identifies no reason to conclude that this is the exceedingly rare case in which it should be permitted to enforce a statute that likely violates both the Constitution and federal law.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion should be granted.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 15

1    DATED this 15th day of June, 2023.

2                                    CORR CRONIN LLP

3                                    *s/ Steven W. Fogg*

4                                    Steven W. Fogg, WSBA No. 23528
                                     CORR CRONIN LLP
5                                    1015 Second Avenue, Floor 10
                                     Seattle, Washington  98104-1001
6                                    Ph: (206) 625-8600 | Fax: (206) 625-0900
7                                    sfogg@corrcronin.com

8                                    Paul D. Clement, admitted *pro hac vice*
                                     Erin E. Murphy, admitted *pro hac vice*
9                                    Matthew D. Rowen, admitted *pro hac vice*
                                     Mariel A. Brookins, admitted *pro hac vice*
10                                   CLEMENT & MURPHY, PLLC
11                                   706 Duke Street
                                     Alexandria, VA 22314
12                                   Ph: (202) 742-8900
13                                   paul.clement@clementmurphy.com
                                     erin.murphy@clementmurphy.com
14                                   matthew.rowen@clementmurphy.com
                                     mariel.brookins@clementmurphy.com
15
16                                   *Attorneys for Plaintiff*

17

18

19

20

21

22

23

24

25

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 16

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

4

5

   I hereby certify that on (Date), I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

6

7

   DATED at Seattle, Washington on 15th day of June, 2023.

8

9

10

11

12

13

   *s/ Megan Johnston*

   Megan Johnston, Legal Assistant

   Corr Cronin LLP

   1015 Second Avenue, 10th Floor

   Seattle, WA 98104

   Phone: (206) 625-8600

   Email: mjohnston@corrcronin.com

14

15

16

17

18

19

20

21

22

23

24

25

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 17