FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 08, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT W. FERGUSON, Attorney General of the State of Washington, <br><br> Defendant, <br><br> ALLIANCE FOR GUN RESPONSIBILITY, <br><br> Defendant-Intervenor. | No. 2:23-CV-00113-MKD <br><br> ORDER GRANTING DEFENDANT'S 12(b)(1) AND 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT <br><br> AND <br><br> DENYING AS MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION <br><br> **ECF Nos. 17, 31** |

Before the Court is Defendant Robert W. Ferguson's 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's Complaint. ECF No. 31. On August 18, 2023, the Court held a hearing on the motion. ECF No. 66. Matthew D. Rowen and Steven Fogg appeared on behalf of Plaintiff National Shooting Sports Foundation, Inc. ("NSSF"). Emma Grunberg and Tera Heintz appeared on behalf of Defendant.

ORDER - 1

Zachary Pekelis appeared on behalf of Intervenor Defendant Alliance for Gun Responsibility ("the Alliance").

On April 25, 2023, NSSF filed its Complaint.  ECF No. 1.  On May 4, 2023, NSSF filed a motion for preliminary injunction.  ECF No. 17.  On June 1, 2023, Defendant filed the instant motion, arguing that NSSF lacks standing to file suit and has failed to state a claim upon which relief can be granted.  ECF No. 31.

For the reasons stated herein, Defendant's motion is granted on jurisdictional grounds.  The Court does not reach Defendant's Fed. R. Civ. P. 12(b)(6) arguments.

## BACKGROUND

NSSF is "the trade association for the firearm, ammunition, and hunting and shooting sports industry."  ECF No. 1 at 4 ¶ 8.  "It has a membership of more than 10,000 manufacturers, distributors, and retailers of firearms, ammunition, and related products, as well as other industry members throughout the United States." *Id.*

On April 25, 2023, Washington Governor Jay Inslee signed Substitute Senate Bill 5078 ("SSB 5078") into law.  2023 Wash. Sess. Laws, ch. 163.  SSB 5078 amends RCW 7.48 *et seq.*, Washington's nuisance statute.  *Id.*  The law creates a cause of action against "firearm industry members" for public nuisances resulting from their practices.  *Id.*

The law prohibits "firearm industry members" from knowingly creating, maintaining, or contributing to a public nuisance in Washington though the sale, manufacture, distribution, import, or marketing of "firearm industry products." *Id.* at § 2(3). Firearm industry members are required to "establish, implement, and enforce reasonable controls regarding the manufacture, sale, distribution, importing, use, and marketing of firearm industry products." *Id.* at § 2(4). Firearm industry members are required to "take reasonable precautions" to ensure their products and merchandise are not sold or distributed to downstream distributors or retailers that fail to implement reasonable controls. *Id.* at § 2(5). Members are prohibited from making, distributing, or selling a "firearm industry product" that is designed, sold, or marketed in a manner (1) foreseeably promoting conversion of that product into an illegal product, *id.* at § 2(6)(a); or (2) targeting minors or individuals prohibited from purchasing those products, *id.* at § 2(6)(b).

The law provides that violations of these regulations are a "public nuisance," and may give rise to a claim under Washington's consumer protection act, subjecting firearms industry members to civil liability. *Id.* at § 2(7). Under the law, Washington's attorney general is empowered to seek remedies as well, including punitive damages. *Id.* at § 2(10).

NSSF filed its Complaint immediately upon Governor Inslee's approval. ECF No. 1. NSSF seeks declaratory relief in the form of a court order declaring

ORDER - 3

1   SSB 5078 unconstitutional and injunctive relief preventing Defendant from

2   enforcing SSB 5078's provisions.  ECF No. 1 at 37-38.  On May 4, 2023, NSSF

3   filed a motion for preliminary injunction, seeking an injunction during the

4   pendency of this litigation.  ECF No. 17.

5                                **LEGAL STANDARD**

6          A party may challenge a district court's subject matter jurisdiction under

7   Fed. R. Civ. P. 12(b)(1)—including challenges to Article III standing.  *See*

8   *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

9   "'The party invoking federal jurisdiction bears the burden of establishing' the

10  elements of standing."  *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021) (quoting

11  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  "[A]t the pleading stage, the

12  plaintiff must clearly . . . allege facts demonstrating each element."  *Spokeo, Inc. v.*

13  *Robins*, 578 U.S. 330, 338 (2016) (citation and quotation marks omitted).

14  "'[G]eneral factual allegations of injury' suffice to meet the plaintiff's burden."

15  *Tingley v. Ferguson*, 47 F.4th 1055, 1066 (9th Cir. 2022) (quoting *Lujan*, 504 U.S.

16  at 561), *reh'g denied*, 57 F.4th 1073 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 33

17  (2023).  The Court shall "presume that general allegations embrace those specific

18  facts that are necessary to support the claim."  *Lujan*, 504 U.S. at 561 (citation and

19  alteration omitted).

20

ORDER - 4

**DISCUSSION**

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Isaacson v. Mayes*, 84 F.4th 1089, 1095 (9th Cir. 2023) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014)). Further, "the ripeness inquiry contains both a constitutional and a prudential component." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (citations omitted). Constitutional ripeness often "coincides squarely with standing's injury in fact prong." *Id.*

Defendant challenges Article III standing and ripeness on several grounds, including associational standing, that the alleged injury is not "particularized," and the related issue of prudential ripeness. ECF No. 31 at 14-22. The Court narrows its analysis to a single dispositive issue: that NSSF challenges a law that has yet to be enforced.

"Where, as here, the plaintiff alleges a future injury, the threatened injury must be 'certainly impending' or there must be a 'substantial risk' of the harm occurring." *Tingley*, 47 F.4th at 1066 (quoting *Driehaus*, 573 U.S. at 158). The threat of a law's enforcement may create an injury in fact. *Driehaus*, 573 U.S. at 158-59. To show pre-enforcement standing, "a plaintiff must [(1)] allege 'an

ORDER - 5

intention to engage in a course of conduct [(2)] arguably affected with a constitutional interest, but [(3)] proscribed by a statute, and [4] there exists a credible threat of prosecution thereunder.'" *Tingley*, 47 F.4th at 1067 (quoting *Driehaus*, 573 U.S. at 159).

**A. Specificity of Alleged Intended Conduct**

An overall deficiency of NSSF's Complaint is that it contains few factual allegations. ECF No. 1. In its 38-page Complaint, NSSF details the history of the Protection of Lawful Commerce in Arms Act ("PLCAA") and state laws similar to SSB 5078, ECF No. 1 at 1-5 ¶¶ 1-7, 10-37, and argues the merits of this case. ECF No. 1 at 16-37 ¶¶ 41-107. From the minimal facts alleged, it is understood that NSSF's members are "manufacturers, distributors, and retailers of firearms, ammunition, and related products, as well as other industry members throughout the United States." ECF No. 1 at 4 ¶ 8. Therefore, it might be inferred that at least some NSSF members intend to manufacture, distribute, and sell by retail firearms, ammunition, and related products, and have in the past. *Id.*; *see Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1209 (9th Cir. 2022). It is unknown what NSSF's "other industry members" intend to do, or continue doing. *Id.* NSSF does not argue that its own conduct is the subject of this suit. ECF No. 56.

For a pre-enforcement challenge, a plaintiff must allege intended conduct specific enough to establish standing. The Supreme Court, in *Driehaus*, listed

cases where pre-enforcement challengers demonstrated standing with their alleged

intent to continue specific activities.  573 U.S. at 159-60.  For example, where a

challenger alleged an intent to distribute antiwar handbills under threat of

prosecution, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974); campaign for a

boycott under threat of litigation for accidental misrepresentations, *Babbit v. Farm

Workers*, 442 U.S. 289, 298-302 (1979); display books at bookstores under threat

of criminal prosecution if those books were deemed "harmful to juveniles,"

*Virginia v. American Booksellers Assn., Inc.*, 484 U.S. 383, 386 (1988); and

provide material support to groups designated as terrorist organizations under

threat of prosecution and a history of similar prosecution, *Holder v. Humanitarian

Law Project*, 561 U.S. 1, 8 (2010).  *See Driehaus*, 573 U.S. at 159-161.  In

*Driehaus*, the challenger "pleaded specific statements they intend[ed] to make in

future election cycles" which may have violated a state false statement law.  *Id.* at

161-62.

In *Tingley*, a licensed marriage and family therapist challenged

"Washington's ban on practicing conversion therapy on minors" under the First

and Fourteenth Amendment.  47 F.4th at 1065-66.  The court concluded he

demonstrated "a plan or desire" to violate the challenged law by alleging the

details of his past work and expectations for his future work that amounted to

violations.  *Id.* at 1067-68.

ORDER - 7

In *Isaacson*, physicians, medical groups, and advocacy groups, challenged an Arizona law that restricted abortions sought solely because of genetic abnormality. 84 F.4th at 1094-95. The plaintiffs challenged the law as unconstitutionally vague. *Id.* at 1095. The complaint contained detailed allegations as to the plaintiff's past practices and operations they have abstained from in light of the law. *Id.* at 1094-96. The Ninth Circuit found that the plaintiffs "declared an intention to perform abortions up to the legal limits of the Reason Regulations" and that there was a risk of violating the vague law. *Id.* at 1099.

In each of these cases, the challengers alleged factual context describing past conduct and intended future conduct, which enabled the reviewing court to determine whether the conduct at issue was affected by a constitutional interest and proscribed by the challenged regulation. *See Driehaus*, 573 U.S. at 161-62. Here, the inquiry is hindered because the Complaint lacks allegations as to what NSSF's members have done or intend to do, other than to continue to participate in the firearms industry in many different capacities. The most "specific" allegation inferable is that its members intend to manufacture, distribute, and sell firearms, ammunition, and related products. ECF No. 1 at 4 ¶ 8. This, alone, may justify dismissal for lack of standing, and certainly frustrates the remainder of the analysis below.

ORDER - 8

**B. Intention to Engage in Course of Conduct Arguably Affected with a Constitutional Interest**

NSSF argues that the intended conduct of its members—to manufacture, distribute, and sell firearms—is arguably affected with a constitutional interest. ECF No. 56 at 6-7. Specifically, NSSF offers the First and Second Amendments as a basis for this *Driehaus* factor. *Id.*

The Second Amendment protects "an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). The Ninth Circuit has observed that the right "wouldn't mean much without the ability to acquire arms." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017). However, the right is held by the people—it is a right that "is exercised individually and belongs to all Americans." *Heller*, 554 U.S. at 579-81; *see also N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 31-32 (2022). NSSF's members are "manufacturers, distributors, and retailers." ECF No. 1 at 4. The Second Amendment concerns NSSF members to the extent their conduct implicates the individual right to keep and bear arms—it "does not independently protect a proprietor's right to sell firearms." *See Teixeira*, 873 F.3d at 690. It is arguable that NSSF's members conduct implicates the Second Amendment right.

Turning to the First Amendment, "commercial speech" is afforded "a measure of First Amendment protection commensurate with its position in relation to other constitutionally guaranteed expression." *Lorillard Tobacco Co. v. Reilly*,

ORDER - 9

533 U.S. 525, 553-54 (2001) (quotation marks and citation omitted).  NSSF argues

that its "members' speech promoting their lawful products—the 'marketing' that

SB 5078 unduly restricts—is protected by the First Amendment."  ECF No. 56 at

7.  Representatives of three NSSF member companies have filed declarations

indicating that they fear retaliation for their marketing.[1]  ECF Nos. 18, 19, 20.

Although lacking in specifics, the record demonstrates that at least three NSSF

members intend to market their products, and it is within reason that a number of

other members might do the same.  Pre-enforcement suits in the First Amendment

context are entitled to a relaxed standing inquiry, as "a chilling of the exercise of

First Amendment rights is, itself, a constitutionally sufficient injury."  *Tingley*, 47

F.4th at 1066-67.  The Court does not decide constitutionality at this stage of

litigation.  Although threadbare, the alleged intended activities offered in the

Complaint are "arguably affected with a constitutional interest," specifically, the

---

[1] NSSF did not plead these member-specific facts in the Complaint.  *See* ECF No.
1 at 26-32 ¶¶ 72-90.  However, the Court may consider material outside the
pleadings in assessing constitutional standing.  *Maya v. Centex Corp.*, 658 F.3d
1060, 1067 (9th Cir. 2011) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975);
*Table Bluff Rsrv. (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir.
2001)).

ORDER - 10

First and Second Amendments. *Driehaus*, 573 U.S. at 161. Because NSSF fails its

showing of standing on other grounds, the Court declines to further consider the

constitutional implications of NSSF's allegations.

**C. Intention to Engage in Course of Conduct Arguably Proscribed by Statute**

NSSF argues that SSB 5078 "(more than) 'arguably' proscribes NSSF

members' intended conduct, namely their continued manufacture, sale, and

marketing of their products" in a lawful manner. ECF No. 56 at 7. NSSF asserts

that "arguably proscribed," as applied in *Driehaus*, "is not a stringent test," and

that SSB 5078 is "broad enough" to proscribe intended conduct. *Id.*

Regardless of SSB 5078's scope, NSSF's "intended future conduct" must be

sufficiently defined to determine whether it falls within that scope. *See Driehaus*,

573 U.S. at 162. The *Driehaus* Court observed that the targeted state law

regulating speech "sweeps broadly." 573 U.S. at 162. Importantly, however, the

challenger had already been found in violation of the state law. *Id.* The challenger

did not concede an intent to violate the law, but alleged its intent to "continue to

engage in comparable electoral speech[.]" *Id.* Therefore, "there [wa]s every

reason to think that similar speech in the future will result in similar

proceedings[.]" *Id.* at 163. The previous violation, and the challenger's alleged

intent to continue the conduct underlying the violation, informed the Court's

conclusion "that speech will remain arguably proscribed" by the state law. *Id.*

ORDER - 11

1    NSSF does not allege that its members intend to pursue conduct previously

2  found in violation of SSB 5078.  ECF No. 1.  It cannot, SSB 5078 went into effect

3  after the Complaint was filed.  *See* 2023 Wash. Sess. Laws, ch. 163 (effective July

4  23, 2023).  Instead, NSSF relies on the fear that its members will be subject to

5  liability for otherwise lawful conduct.  *See* ECF No. 56 at 7.  But "an allegation

6  that a plaintiff is 'subject to' the challenged ordinance cannot suffice."  *See*

7  *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1007 (9th Cir. 2011).

8  There must be a further allegation that its members "intend to engage in conduct

9  arguably proscribed" by the law at issue.  *Id.*

10    As the Third Circuit recently observed in a case where NSSF challenged a

11  comparable New Jersey law, "[t]hough the Law clearly regulates selling and

12  marketing guns, whether [NSSF's] intended conduct is arguably forbidden is

13  murky."  *Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, 80 F.4th 215, 220 (3d

14  Cir. 2023).  There, as here, NSSF's standing cannot be founded upon "the specter

15  of sweeping liability."  *See id.* (quotation marks omitted).

16    NSSF has failed to offer allegations of "intended future conduct [that] is

17  arguably proscribed by the statute."  *Driehaus*, 573 U.S. at 162 (quotation marks

18  and alterations omitted).

19

20

ORDER - 12

**D. Credible Threat of Prosecution**

The Ninth Circuit "rel[ies] on a three-factor inquiry to help determine whether a threat of enforcement is genuine enough to confer an Article III injury . . . (1) whether the plaintiff has a 'concrete plan' to violate the law,[2] (2) whether the enforcement authorities have 'communicated a specific warning or threat to initiate

---

[2] NSSF argues that Defendant has failed to address the proper standard. ECF No. 56 at 8. In some recent cases, the Ninth Circuit has folded its analysis of alleged intended conduct into the "credible threat" factor, rather than consider alleged intended conduct in advance assessing a "credible threat." *See, e.g.*, *Tingley*, 47 F.4th at 1067; *Unified Data Servs.*, 39 F.4th at 1209-10. In other recent cases, the Ninth Circuit applied *Driehaus*'s three-factor test as the Court does here. *See, e.g.*, *Isaacson*, 84 F.4th at 1098-1101; *Arizona v. Yellen*, 34 F.4th 841, 849-51 (9th Cir. 2022), *reh'g denied*, No. 21-16227 (9th Cir. July 7, 2022). In such cases, the Ninth Circuit applies its own three-part test as a means of assessing *Driehaus*'s third factor. *See Unified Data Servs.*, 39 F.4th at 1210 n.9. In any event, the Ninth Circuit's "concrete plan" factor merges significantly with *Driehaus*'s "intention to engage" framework, and the analysis leads to the same conclusion in this case, however framed. *See id.* at 1210-11.

ORDER - 13

1  proceedings,' and (3) whether there is a 'history of past prosecution or

2  enforcement.'" *Tingley*, 47 F.4th at 1067.

3    1.  *Concrete Plan*

4    "A concrete plan need not be 'cast in stone' but must be 'more than a

5  hypothetical intent to violate the law.'" *Arizona*, 34 F.4th at 850 (citation omitted).

6  Plaintiffs need not "specify when, to whom, where, or under what circumstances

7  they plan to violate the law when they have already violated the law in the past."

8  *Tingley*, 47 F.4th at 1068 (citation and quotation marks omitted); *see also Arizona*,

9  34 F.4th at 850.

10    NSSF argues that its members have a concrete plan to violate SSB 5078,

11  because they intend to continue manufacturing, selling, and marketing lawful

12  firearm products.  ECF No. 56 at 9.  It argues that, because SSB 5078 creates

13  liability for "unreasonable" conduct, its members "face a very real threat of being

14  sued for no reason other than continuing to lawfully make, sell, and market lawful

15  products the [Defendant] does not like." *Id.* (alteration omitted).

16    In *Tingley*, the complaint "specifically alleged [the plaintiff's] past work

17  with clients and expectations for future work with clients that show a plan or desire

18  to violate Washington's law." 47 F.4th at 1067.  NSSF's Complaint does not

19  allege its members' "specific" past work or "specific" expectations for future

20  work, the allegations are very broad.  It contains no plan or desire to violate

ORDER - 14

Washington's law.  *See* ECF No. 1.  Indeed, a hurdle that NSSF faces is that its more-than-ten-thousand members are engaged in a wide variety of work, some of whom are likely at no risk of violating SSB 5078.

Another relevant comparison is *Unified Data Servs.*, where several companies sued the FTC over robocalling regulations that prohibited outbound prerecorded calls without prior consent by the consumer.  39 F.4th at 1204-05.  There, the plaintiffs intended to use soundboard technology, which permitted agents to interact with consumers in real time with prerecorded messages on a soundboard.  *Id.* at 1204.  But the court found that "the complaint utterly lack[ed], let alone state[d] with some degree of concrete detail, an allegation that Plaintiffs intend to violate" the challenged regulations.  *Id.* at 1210 (quotation marks omitted).  The Ninth Circuit explained,

> The complaint fails to state to what extent Plaintiffs currently use soundboard technology . . . and whether they plan to use it in the future.  They have not, in short, provided any information about the "when, to whom, where, or under what circumstances" they would use soundboard technology but for the challenged policies . . . "Without these kinds of details, a court is left with mere "some day" intentions,' which 'do not support a finding of the "actual or imminent" injury that our cases require.'"

*Id.* at 1210-11 (quoting *Lopez v. Candaele*, 630 F.3d 775, 786-88 (9th Cir. 2010)).  As the court explained, Article III standing is not automatically conferred by

ORDER - 15

membership in an industry now subject to a new regulation, even one that is "potentially ruinous." *Id.* at 1211.

It is NSSF's burden to allege facts demonstrating each element of standing. *See Spokeo*, 578 U.S. at 338.  While the Court may "presume that general allegations embrace those specific facts that are necessary to support the claim," NSSF's general allegations fail to embrace any facts specific enough for standing. *See Lujan*, 504 U.S. at 561.  NSSF has not alleged a plan sufficiently "concrete" to demonstrate standing.

### 2.  Specific Warnings or Threats

A promise to enforce a law that is challenged as unconstitutional "amounts to a credible threat of enforcement. *Isaacson*, 84 F.4th at 1101 (citing *Tingley*, 47 F.4th at 1068).  In the First Amendment context, "a plaintiff 'need only demonstrate that a threat of potential enforcement will cause him to self-censor.'" *Tingley*, 47 F.4th at 1068 (quoting *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014)).

The Complaint sets forth statements by Washington policymakers at public hearings in which they discuss the contours of SSB 5078.  ECF No. 1 at 24 ¶¶ 66-67, 30 ¶ 86.  NSSF argues that Defendant publicly stated in April 2023 that SSB 5078 was designed as a challenge to the PLCAA.  ECF No. 56 at 2.  In that same public statement, NSSF argues that Defendant praised a comparable New York law

and suits brought under that law.  *Id.* at 3.  NSSF argues that Defendant has promised to pursue litigation under SSB 5078.  *Id.* at 11-12.

There have been warnings and threats from the relevant authorities that SSB 5078 will be enforced.  Further, there is a suggestion that the statements have had a chilling effect on NSSF member's activity.  *See* ECF Nos. 18, 19, 20.  But, the threats, and resulting "chilling effect," are nonspecific and cannot outweigh the other factors in determining whether there is a "credible threat" of enforcement. *See Tingley*, 47 F.4th at 1067.

### 3.  History of Prosecution or Enforcement

The "history of enforcement" factor "carries little weight when the challenged law is relatively new, and the record contains little information as to enforcement."  *Tingley*, 47 F.4th at 1069 (quotation marks omitted).  The Complaint and the instant briefing were all filed before SSB 5078's July 23, 2023 effective date.  2023 Wash. Sess. Laws, ch. 163.  Therefore, SSB 5078's history of enforcement (or lack thereof) is minimally relevant.

As the Third Circuit said about the complaint that NSSF brought to it— which has sections identical to the instant Complaint, *see* ECF No. 1, No. 22-cv-6646 (D.N.J. Nov. 16, 2022), "this suit falls far short of even the 'normal' pre-enforcement challenge."  *Nat'l Shooting Sports Found.*, 80 F.4th at 223.  "A brand-new civil tort statute, without more, does not justify a federal court's intervention."

ORDER - 17

*Id.*  Article III is the provision of the Constitution from which the judicial power arises, and that power is limited to deciding "live cases or controversies."  *Arizona*, 34 F.4th at 848.  NSSF has failed to bring a live case or controversy before the Court.

## CONCLUSION

Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(1) is granted. The Court does not reach Defendant's Fed. R. Civ. P. 12(b)(6) arguments.

Accordingly, **IT IS HEREBY ORDERED**:

1.     Defendant's 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's Complaint, **ECF No. 31,** is **GRANTED.**

2.     NSSF's Complaint, **ECF No. 1**, is **DISMISSED without prejudice.**

3.     NSSF's Motion for Preliminary Injunction, **ECF No. 17**, is **DENIED as moot.**

**IT IS SO ORDERED.**  The District Court Executive is directed to file this order, provide copies to the parties, enter judgment of dismissal without prejudice, and **CLOSE** the file.

DATED March 8, 2024.

<u>*s/Mary K. Dimke*</u>
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 18